UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

DISABILITY RIGHTS NEW YORK,
CARLOS LEON AND STEPHANIE DIAZ,
  on behalf of themselves and all others
  similarly situated,


                              Plaintiffs,


        -against-


THE CITY OF NEW YORK, NEW YORK
CITY POLICE DEPARTMENT, NEW
YORK CITY DEPARTMENT OF
TRANSPORTATION, ERIC ADAMS, in
his official capacity as Mayor of the City of
New York, KEECHANT L. SEWELL, in
her official capacity as Commissioner of
the New York Police Department, and
YDANIS RODRIGUEZ, in his official
capacity as Commissioner of the New York
City Department of Transportation.


                              Defendants.

_____

CASE NO: _____

**CLASS ACTION COMPLAINT AND
DEMAND FOR JURY TRIAL**

DISABILITY RIGHTS NEW YORK
Christina Asbee
Jennifer Monthie
25 Chapel Street, Suite 1005
Brooklyn, NY 11201
(518) 432-7861
Christina.Asbee@DRNY.org

*Attorneys for Plaintiffs*

## INTRODUCTION

1.      This lawsuit seeks to end discrimination perpetuated by the City of New York ("NYC") and its Mayor; the New York City Police Department and its Commissioner; and the New York City Department of Transportation and its Commissioner (collectively "Defendants") against individuals with disabilities who reside in and use the pedestrian pathways in the East Mount Eden neighborhood of the Bronx.

2.      This litigation is geographically limited to the eastern part of the Bronx's Mount Eden neighborhood, which encompasses the area around Claremont Park and the BronxCare Health Services Hospital ("East Mount Eden neighborhood").

3.      For purposes of this action, the East Mount Eden neighborhood is bordered by Jerome Avenue on the west, Clay Avenue on the east, 170th Street on the south, and 174th Street on the north.

4.      Defendants have failed to maintain pedestrian pathways that are accessible to all individuals with mobility disabilities and to individuals with vision disabilities, including blindness and low-vision, in violation of Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and the New York City Human Rights Law ("NYCHRL").

5.      This action is on behalf of Plaintiffs and the class they represent for declaratory and injunctive relief, and for monetary damages for the Named Plaintiffs to redress injuries they have suffered, as a result of being discriminated against, and deprived of the public program of pedestrian pathways.

## JURISDICTION

6.      This is an action for declaratory, injunctive, and monetary relief, brought

pursuant to Title II of the ADA, 42 U.S.C. § 12131 *et seq.*; Section 504, 29 U.S.C. § 794; and the NYCHRL, N.Y.C. Admin. Code § 8-101 *et seq.*

7.    This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 for claims arising under the ADA and Section 504, and supplemental jurisdiction over the NYCHRL claims pursuant to 28 U.S.C. § 1367.

8.    This Court has authority to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## **VENUE**

9.    Pursuant to 28 U.S.C. § 1391(b), venue is proper in this District. The Defendants are located within this District and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District.

## **PARTIES**

**I.    Named Plaintiffs**

**A.  Plaintiff Carlos Leon**

10.    Plaintiff Carlos Leon resides at 1560 Grand Concourse, in the Bronx, New York, at the corner of Grand Concourse and Mount Eden Mall.

11.    Mr. Leon has lived in the Bronx for almost two years, and intends to remain in his neighborhood for the foreseeable future.

12.    Mr. Leon has cerebral palsy.

13.    His mobility disability prevents him from walking.

14.    Mr. Leon uses a hybrid wheelchair that can be used manually or with a battery.

15.    He is a qualified individual with a disability within the meaning of the ADA,

Section 504, and NYCHRL.

16.     Defendants' failure to maintain an accessible pedestrian pathway program has caused and continues to cause Mr. Leon physical and mental harm.

**B.  Plaintiff Stephanie Diaz**

17.     Plaintiff Stephanie Diaz resides at 1560 Grand Concourse, in the Bronx, New York, at the corner of Grand Concourse and Mount Eden Mall.

18.     Ms. Diaz grew up in the Bronx and has lived in the East Mount Eden neighborhood for more almost thirty years.

19.     Ms. Diaz intends to remain in the East Mount Eden neighborhood for the foreseeable future.

20.     Ms.  Diaz has a visual disability due to a progressive ocular disease called keratoconus.

21.     Ms. Diaz's visual disability causes her to have blurred vision, leaving her unable to see clearly.

22.     She is a qualified individual with a disability within the meaning of the ADA, Section 504, and NYCHRL.

23.     Defendants' failure to maintain an accessible pedestrian pathway program has caused Ms. Diaz physical and mental harm.

**II.     New York State Protection and Advocacy System**

24.     Plaintiff Disability Advocates, Inc., is an independent corporation organized under the laws of the State of New York. Disability Advocates, Inc. is authorized to conduct business under the name Disability Rights New York ("DRNY").

25.     DRNY is a Protection and Advocacy system ("P&A"), as that term is defined

under the Developmental Disabilities Assistance and Bill of Rights Act ("DD Act"), 42

U.S.C. § 15041 *et seq.*, the Protection and Advocacy for Individuals with Mental Illness Act

of 1986 ("PAIMI Act"), 42 U.S.C. § 10801 *et seq.*, and the Protection and Advocacy of

Individual Rights Act ("PAIR Act"), 29 U.S.C. § 794e *et seq.* with offices in the State of

New York located at: 25 Chapel Street, Suite 1005, Brooklyn, NY 11201; 725 Broadway,

Suite 450, Albany, NY 12207; and 44 Exchange Blvd., Suite 110, Rochester, NY 14614.

26.     As New York State's Protection & Advocacy system, DRNY is specifically

authorized to pursue legal, administrative, and other appropriate remedies or approaches to

ensure the protection of, and advocacy for, the rights of individuals with disabilities. 42

U.S.C. § 15043(a)(2)(A)(i); 42 U.S.C. § 10807; N.Y. Exec. Law § 558(b).

27.     Pursuant to the authority vested in it by Congress to file claims of abuse,

neglect, and rights violation on behalf of individuals with disabilities, DRNY brings claims

on behalf of individuals with disabilities, including the individuals named herein, whose

neighborhood is inaccessible because the pedestrian pathways are inaccessible.

**III.    The Proposed Class**

28.     The proposed class is defined as all people with mobility and vision

disabilities who use or will use sidewalks and pedestrian street crossings in the East Mount

Eden neighborhood.

**IV.    Defendants**

29.     Defendant NYC, as defined by the laws of the City of New York, is a "public

entity" within the meaning of Title II of the ADA, as that term is defined under 42 U.S.C. §

12131(1) and 28 C.F.R. § 35.104.

30.     Defendant NYC is the recipient of federal funds, and therefore subject to the

accessibility requirements of the Section 504.

31.     Defendant New York City Department of Transportation ("NYC DOT"), as defined by the laws of the City of New York, is a "public entity" within the meaning of Title II of the ADA, as that term is defined under 42 U.S.C. § 12131(1) and 28 C.F.R. § 35.104.

32.     Defendant NYC DOT is the recipient of federal funds, and therefore subject to the accessibility requirements of the Section 504.

33.     Defendant NYC DOT is the public entity responsible for installing, repairing, and maintaining all pedestrian rights-of-way along Defendant NYC's sidewalks, curb cuts, and crosswalks.

34.     New York City Police Department ("NYPD"), as defined by the laws of the City of New York, is a "public entity" within the meaning of Title II of the ADA, as that term is defined under 42 U.S.C. § 12131(1) and 28 C.F.R. § 35.104.

35.     Defendant NYPD is the recipient of federal funds, and therefore subject to the accessibility requirements of the Section 504.

36.     Defendant NYPD is the public entity charged to enforce traffic laws, traffic management, and emergency response, and responsible for enforcing traffic and parking violations and issuing traffic and parking tickets.

37.     Defendant Adams, sued in his official capacity, is the Mayor of the City of New York.

38.     Under the New York City Charter, the Mayor is "responsible for the effectiveness  and integrity of city government operations and shall establish and maintain such policies and procedures as are necessary and appropriate to accomplish this responsibility including the implementation of effective systems of internal control by each

agency and unit under the jurisdiction of the mayor." N.Y.C. Charter § 8(a).

39.    Defendant Rodriguez, sued in his official capacity, is the Commissioner of the Department of Transportation.

40.    Under the New York City Charter, the Commissioner of the NYC DOT is charged, *inter alia*, to "enforce laws, rules and regulations concerning the parking of vehicles and the movement and conduct of vehicular and pedestrian traffic [including,] concurrently with the police department [. . .] prohibiting, regulating, directing, controlling or restricting both the parking of vehicles and the movement and conduct of vehicular and pedestrian traffic in and on all streets, squares, avenues, highways, parkways and public off-street parking facilities in the city. . . [and to hire officers for the] purpose of enforcing laws, rules and regulations prohibiting, regulating, directing, controlling or restricting the parking of vehicles and the movement and conduct of vehicular and pedestrian traffic, which officers, agents and employees are hereby authorized, empowered and designated to issue, make and serve tickets, summonses and complaints for traffic infractions pursuant to article two-A of the vehicle and traffic law and such rules and regulations." N.Y.C. Charter § 2903(14)(a)-(b).

41.    Defendant Sewell, sued in her official capacity, is the Commissioner of the NYPD.

42.    Under the New York City Charter, the Commissioner of the New York Police Department is to be "chargeable with and responsible for the execution of all laws and the rules and regulations of the department." N.Y.C. Charter § 434(b). This includes the responsibility to "regulate, direct, control and restrict the movement of vehicular and pedestrian traffic for the facilitation of traffic and the convenience of the public as well as

the proper protection of human life and health; remove all nuisances in the public streets, parks and places." *Id.* at 435.

## FACTS

### Inaccessible Pedestrian Pathways in the East Mount Eden Neighborhood

43.     The pedestrian pathways at issue for the Plaintiffs and the class they represent are located entirely within the geographic area around Claremont Park and the BronxCare Health Services hospital, in the eastern part of the Mount Eden neighborhood. This area is bordered by Jerome Avenue on the west, Clay Avenue on the east, 170th Street on the south, and 174th Street on the north ("East Mount Eden neighborhood").

44.     The neighborhood includes the pedestrian pathways running along the Mount Eden Mall area, between the Grand Concourse and Weeks Avenue, including all intersections between 172nd Street and 173rd Street ("Mount Eden Mall").

45.     Plaintiffs request emergency injunctive relief to remove parked vehicles that create barriers within the pedestrian pathways along and around the Mount Eden Mall area, including street crossings therein.

46.     Pedestrian pathways in the East Mount Eden neighborhood are frequently inaccessible due to parked vehicles that block curb cuts and intersections, and barriers along the sidewalks such as trash cans, debris, cracks in the pavement, level changes greater than a quarter of an inch, potholes, narrow pathways, and other issues.

47.     Plaintiffs regularly encounter ambulances and other emergency vehicles parked on the sidewalk, vehicles parked in intersections, vehicles blocking curb cuts, and objects such as garbage cans, blocking pedestrian pathways.

48.     The inaccessibility of the neighborhood's pedestrian pathways has worsened

since the summer of 2020, when the NYC DOT established COVID-19 Medical Health On-Street Parking Permits. https://www1.nyc.gov/html/dot/downloads/pdf/Covid-19-Parking-Privileges.pdf (Last visited May 11, 2022).

49.     These permits lifted certain parking restrictions for healthcare workers, but did not lift the prohibition of parking in crosswalks, sidewalks, bus stops, bus lanes, ambulance lanes, and other designated areas.

50.     Since July 2020, permit-holders around the BronxCare Health Services hospital have parked in the crosswalks and other areas making the pedestrian pathways inaccessible.

51.     Non-permit holders also park in the crosswalks and other areas that make the pedestrian pathways inaccessible.

52.     Permit and non-permit holders also park their vehicles in ambulance lanes near the BronxCare Health Services hospital. This results in ambulances parking in bus lanes, preventing Named Plaintiffs from accessing the bus stop.

53.     Defendants are aware that vehicles park in crosswalks, in front of curb cuts, and on sidewalks along and around Mount Eden Mall.

54.     Defendant NYPD has not addressed these parking violations by ticketing or removing illegally parked vehicles in the crosswalks and other areas that make the pedestrian pathways inaccessible around Mount Eden Mall.

55.     The sidewalks, crosswalks, and curb cuts in the East Mount Eden neighborhood are damaged and in disrepair.

56.     Significant level changes, cracked and jagged sidewalks, and inadequately sloped curb cuts all present an obstacle and a hazard to the Named Plaintiffs and others with

mobility or vision disabilities.

57.     All of these barriers prevent Plaintiffs and other similarly-situated individuals from using the pedestrian pathways in the East Mount Eden neighborhood and keep them from fully participating in the community.

**Harm to Plaintiff Carlos Leon**

58.     Plaintiff Carlos Leon works as a care manager, is the father of a young daughter, and has a small dog.

59.     Mr. Leon navigates or attempts to navigate his neighborhood's pedestrian pathways in his wheelchair on a daily basis in order to do regular errands and activities such as grocery shopping, attending medical and other appointments, going to the gym, visiting friends and family, walking his dog, and taking his daughter to the park or the local library.

60.     As a result of the COVID-19 pandemic, Mr. Leon began working from home but will need to use the pedestrian pathways around his home when he resumes commuting to his office.

61.     Mr. Leon is frequently unable to navigate outside of his home because the pedestrian pathways are blocked by parked vehicles, and other movable objects such as garbage cans and debris.

62.     Barriers to accessibility within the pedestrian pathways include but are not limited to: vehicles parked in the pedestrian crossings; vehicles blocking curb cuts; vehicles blocking the bus stop near the intersection of Grand Concourse and Mt Eden Avenue; ambulances and emergency vehicles parked on the sidewalks; and conditions of disrepair such as pot holes, level changes, cracks and broken concrete, and other barriers.

63.     As a result of barriers in the pedestrian pathways, Mr. Leon must rely upon

other family members to grocery shop, run errands, go to the drug store, take his daughter to the parks and community events, and walk his dog.

64.    Mr. Leon has been unable to get to and from the closest bus stop because parked vehicles have blocked his access from his apartment to the stop.

65.    He has also been unable to safely board and exit the bus because vehicles have been parked in front of the bus stop and the curb cuts he relies on to navigate the pedestrian pathways that serve the bus stop.

66.    When Mr. Leon leaves his apartment, he has to plan alternate travel routes to avoid vehicles and other barriers blocking the pedestrian pathway.

67.    This results in Mr. Leon having to take a less-direct and more time-consuming route to his destination.

68.    For example, when Mr. Leon leaves his apartment and needs to get to the closest bus stop, the fastest route is to cross directly over E. Mt. Eden Avenue. This route requires Mr. Leon to navigate a sidewalk, sandwiched between two crosswalks, each with two curb cuts.  Often, vehicles are parked in the crosswalk, blocking Mr. Leon's access to navigate the curb cuts and crosswalks to get across Mt. Eden Avenue. When direct access from the bus to the bus stop is blocked, Mr. Leon cannot get on or off the bus from the sidewalk. Mr. Leon is forced to board and exit the bus from the street.

69.    When Mr. Leon takes his daughter to Claremont Park, the most direct route currently requires him to navigate across four crosswalks and eight curb cuts. The accessible entrance to Claremont Park is frequently blocked by vehicles obstructing the curb cut and crosswalk. Other park entrances have stairs without a ramp or other accessible means of entry. When a curb cut, crosswalk or section of a sidewalk is impassible because

of a barrier such as a parked car or pot hole, Mr. Leon must find a different route to get to the park, which requires backtracking and navigating in a way that takes him and his daughter much longer to reach the park.

70.     Mr. Leon is often forced to use the street to get to his destination. Once traveling in the street, he can only get back onto the pedestrian pathways when he can find a curb cut that is free from barriers such as parked vehicles, pot holes, or insurmountable level changes. Mr. Leon is exposed to moving vehicles when his only option is to use the street to get around.

71.      Mr. Leon risks injury when he uses the streets to navigate because he is unable to move out of the way of traffic and may not be visible to other vehicles. Vehicles that are high off the ground, such as buses, SUVs, and trucks, are likely unable see Mr. Leon in his wheelchair while riding in the street.

72.     When the sidewalks and curb cuts around his apartment building are blocked, Mr. Leon is trapped in his home.

73.     The stress of being confined to his apartment due to the inaccessibility of his neighborhood's pedestrian pathways has caused Mr. Leon significant emotional distress.

74.     Mr. Leon's mental and physical health have been negatively impacted by Defendants' failure to operate an accessible pedestrian pathway program.

75.     Mr. Leon has experienced and continues to experience barriers in attempting to navigate the pedestrian pathways in his neighborhood as a direct result of Defendants' known and continuous violations of disability access laws.

76.     Mr. Leon wants to and intends to continue to use the pedestrian pathways in his neighborhood.

77.     Mr. Leon's injuries would be directly redressed by a favorable decision in this case.

### Harm to Plaintiff Stephanie Diaz

78.     Plaintiff Stephanie Diaz has a chronic, degenerative eye condition that makes it difficult for her to perceive depth and motion, particularly at night.

79.     Ms. Diaz navigates or attempts to navigate her neighborhood's pedestrian pathways on a daily basis.

80.     She uses the neighborhood's sidewalks, curb cuts, and crosswalks to run errands, visit friends and family, walk her dog, and take her daughter to appointments and activities.

81.     Ms. Diaz intends to send her daughter to the local public elementary school. The pedestrian pathway between her apartment and the elementary school is filled with obstacles and barriers that make it difficult and dangerous to take her daughter to and from school.

82.     When the sidewalk condition is not level or flat, Ms. Diaz is prone to falling or tripping because of her vision disability. Ms. Diaz frequently trips on the jagged, uneven sidewalks, debris, level changes, and potholes when using the pedestrian pathways around her home.

83.     When a vehicle is parked in her pathway, Ms. Diaz has difficulty determining if it is moving or stationary because of her vision disability.

84.     Ms. Diaz is frequently forced to step into the road because she cannot see around vehicles parked in the pedestrian pathways.

85.     Vehicles parked in crosswalks and blocking curb cuts create dangerous

conditions for Ms. Diaz because she must step out into the street to be able to determine if a vehicle is moving or stationary.

86.     Ms. Diaz is fearful of being struck by a vehicle when she cannot see whether there is a moving vehicle in her path.

87.     Ms. Diaz wears glass scleral lenses to help manage her keratoconus.

88.     These lenses are meant to be worn for up to eight hours a day, but she often wears them for up to sixteen hours so she can help Mr. Leon and their daughter navigate the neighborhood.

89.     Wearing the scleral lenses for more than the recommended amount of time can cause scarring on the eyeball and further damage Ms. Diaz's vision.

90.     Ms. Diaz suffers emotional distress because of the inaccessibility of her neighborhood's pedestrian pathways.

91.     Ms. Diaz's mental and physical health has been negatively impacted by Defendants' failure to operate an accessible pedestrian pathway program.

92.     She is concerned about the safety risks the inaccessible pedestrian pathways create to her and her family, including serious injury or death.

93.     Ms. Diaz wants to and intends to continue to use the sidewalks, curb cuts, and crosswalks in her neighborhood.

94.     Ms. Diaz's injuries would be directly redressed by a favorable decision in this case.

**Plaintiffs' Unsuccessful Attempts at Resolution**

95.     Defendants have been on notice as early as July 2020 of the barriers encountered by Plaintiffs throughout the East Mount Eden neighborhood.

96.     Plaintiff Diaz made dozens of reports via 311 to request assistance regarding these accessibility barriers.

97.     These 311 reports were opened and closed without actual resolution.

98.     In March 2021, Ms. Diaz met with several leaders of BronxCare Health Systems, including Hiram Torres, Vice President of Operations, Robert Sancho, Vice President of Development and External Affairs, James Dunne, and Assistant Vice President of Support and Operations, to report her concerns about the illegally parked cars with temporary COVID-19 Medical Health On-Street Parking Permits.

99.     In addition to her meeting with the hospital, Ms. Diaz approached a number of local elected officials to express her concerns about the hazardous and inaccessible conditions of the neighborhood's pedestrian pathways.

100.    On March 16, 2021, she contacted Vincent Fortino and Wilfredo Benitez of the NYPD's Neighborhood Coordination Office of the 44th Precinct.

101.    On March 18, 2021, she contacted Edmund Asiedu, ADA Coordinator & Disability Service Facilitator at NYC DOT.

102.    On October 5, 2021, she contacted District 16 Bronx City Council.

103.    Ms. Diaz's communications and reports did not resolve the problems causing the pedestrian pathways to be inaccessible to her.

104.    On November 1, 2021, DRNY contacted Defendant NYPD's Neighborhood Coordination Officers of the 44th Precinct to report the accessibility problems associated with the illegally parked vehicles along the Mount Eden Mall.

105.    On December 7, 2021, DRNY met with Defendant NYPD's 44th Precinct to share Plaintiffs' concerns.

106.     The NYPD officer present in that meeting agreed to conduct enforcement in the Mount Eden Mall area between December 10, 2021 through December 18, 2021 ("monitoring period") by ticketing illegally parked vehicles and speaking with vehicle owners.

107.     On December 16, 2021, the NYPD reported to DRNY that the agency issued 10 summons during the monitoring period.

108.     The NYPD did not report whether the agency, or its agents, towed any illegally parked vehicles during the monitoring period.

109.     On February 11, 2022, DRNY conducted an in-person survey with Ms. Diaz of the East Mount Eden neighborhood, including the Mount Eden Mall area.

110.     During this survey, Ms. Diaz explained to DRNY that the condition of the pedestrian pathways in the East Mount Eden neighborhood during DRNY's visit was representative of its typical inaccessible condition since July 2020.

111.     During the course of their nearly two hour survey, DRNY took at least 80 photos, and witnessed at least 25 parked vehicles blocking the pedestrian pathways.

112.     The pedestrian pathway along the hospital side of Mount Eden Mall between Sheridan and Selwyn Avenues were impassible due to ambulance parking, tents, other objects, and parked vehicles.

113.     On February 17, 2022, DRNY sent a letter to Mayor Adams, Commissioner Sewell, Commissioner Rodriguez, and Bronx Councilperson Althea Stephens.

114.     This letter outlined 1) accessibility barriers encountered by Plaintiffs in the East Mount Eden neighborhood, 2) laws being violated, and 3) a list of steps required to resolve the discriminatory conduct.

115.    Plaintiffs' letter outlined the specific barriers to access the pedestrian pathways in the East Mount Eden neighborhood, and included photos of the vehicles parked in the pedestrian pathways.

116.    After sending its letter and prior to filing this lawsuit, DRNY spoke with Defendants NYC DOT and the NYPD.

117.    Defendants were unable to put concrete steps in place to remove the vehicles blocking Plaintiffs' access to the pedestrian pathways.

118.    Defendant NYC DOT did not provide DRNY a remediation plan for the pedestrian pathways in the East Mount Eden neighborhood.

119.    On March 18, 2022, Defendant NYPD and DRNY had a phone meeting to discuss the barriers explained in DRNY's February 17, 2022 letter.

120.    During the phone meeting, DRNY explained to NYPD's legal counsel the pervasive nature of the illegally parked vehicles in and around Mount Eden Mall.

121.    During the phone meeting, DRNY requested that Defendants NYC DOT and NYPD meet with DRNY to discuss broad resolution to the pedestrian pathway barriers in the East Mount Eden neighborhood.

122.    Defendant NYPD did not share any information about whether the agency would take steps to remove vehicles blocking the pedestrian pathways. Instead, Defendant NYPD shared the cell phone numbers of two NYPD officers in a follow-up email.

123.    On March 29, 2022, Defendant NYPD notified DRNY by email that it no longer had information to share related to the matter, and it would not participate in further meetings to resolve the inaccessible pedestrian pathways issue.

124.    Defendant NYC DOT continued communicating with DRNY.

125.     In March and April, 2022, NYC DOT worked with the BronxCare Health System to remove the tents blocking the sidewalks around the hospital's entrance at Mt. Eden and Selwyn Avenues.

126.     On May 20, 2022, DRNY spoke with a sergeant from Defendant NYPD's 44th Precinct, and the sergeant followed up in an email on May 25, 2022. As a resolution to the problem of parked cars in the pedestrian pathways, the sergeant provided the phone numbers and emails of the Neighborhood Community Officers of the precinct and encouraged Plaintiffs to call whenever they could not navigate around a parked vehicle in the pedestrian pathway.

127.     To date, Defendants have failed to provide resolutions to remedy the ongoing barriers caused by the conditions of the pedestrian pathways in the East Mount Eden neighborhood, or to address the lack of enforcement by the NYPD along and around Mount Eden Mall to remove parked vehicles from the pedestrian pathways, and take necessary preventative measures.

## CLASS ALLEGATIONS

128.     Pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs bring this action, for injunctive and declaratory relief purposes, on their own behalf and on behalf of all persons similarly situated.

129.     As noted above, the Class is defined as all persons with mobility and vision disabilities who use or will use sidewalks and pedestrian street crossings in the East Mount Eden neighborhood.

130.     The deficiencies in Defendants' pedestrian pathway program described above, and the resulting risks to persons with mobility and vision disabilities in the Class,

arise from Defendants' policies and practices including the following:

    a.   Defendants' failure to maintain pedestrian pathways so they are free from
        barriers, and

    b.   Defendants' failure to enforce traffic laws to prevent vehicles from parking in
        pedestrian pathways.

131.    As a result of these policies and practices described above, people with mobility and vision disabilities in the Class are subject to the following harm and risk: 1) they are unable to access the pedestrian pathway program in the East Mount Eden neighborhood; and 2) they are exposed to significant risk of imminent future violations of the ADA and Section 504.

132.    These policies and practices arise from the action and inaction taken by Defendants. The policies and practices, and their consequences, have been so widespread and consistent that Defendants should be deemed to have acquiesced to them.

133.    The Class is sufficiently numerous to make joinder impracticable.  There are roughly 600,000 residents (6.8 percent) in New York City who have mobility disabilities and just under 200,000 residents (2.2 percent) who have vision disabilities. The East Mount Eden neighborhood is home to nearly 25,000 residents, living in roughly 8,400 housing units. At least 2,250 residents with mobility and vision disabilities live in the East Mount Eden neighborhood.

134.    The number of individuals with a mobility or vision disability who use or will use the pedestrian pathways in the East Mount Eden neighborhood far exceeds the minimum threshold necessary to meet the numerosity requirement for class certification.

135.    The amount of people in the proposed Class make joinder impracticable

because of the fluid nature of the Class, the limited financial resources of Class members, and the unknown identity of future class members.

136.    There are questions of fact and law common to the claims of the Class members including:

> a.   Whether Defendants' failure to provide an accessible pedestrian pathway within the East Mount Eden neighborhood violates the ADA, Section 504, and NYCHRL;
>
> b.   Whether Defendants' failure to implement adequate coordination, policies and other practices to reasonably ensure the Class is able to access the pedestrian pathway program, violates the ADA, Section 504, and NYCHRL; and
>
> c.   Whether the Named Plaintiffs and individuals similarly situated are entitled to declaratory and injunctive relief to vindicate their statutory rights.

137.    Each Named Plaintiff is a member of the Class. The claims the Named Plaintiffs raise are typical of those of the Class, as each Class member's claim would arise from the same course of events, and each Class member would make similar legal arguments to prove Defendants' liability.

138.    The remedies sought by the Named Plaintiffs are the same remedies that would benefit the Class: an injunction requiring Defendants to take affirmative acts to cure their violations of law and provide or arrange for the implementation of an accessible pedestrian pathway program, for the Named Plaintiffs and the Class.

139.    The Named Plaintiffs will fairly and adequately represent the interests of the Class. There are no conflicts among the Named Plaintiffs and any members of the Class.

140.    The undersigned counsel have extensive experience in litigating civil rights

and class action lawsuits, including those involving the rights of people with disabilities.

141.    Defendants have acted or refused to act on grounds generally applicable to all Class members, and injunctive and declaratory relief is appropriate with respect to the Class as a whole.

**CLAIMS FOR RELIEF**

**FIRST CAUSE OF ACTION**
**(Violation of the ADA and 42 U.S.C. § 1983)**

142.    Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the Complaint.

143.    Title II of the ADA, 42 U.S.C. § 12132, prohibits a public entity from excluding a person with a disability from participating in, or otherwise benefitting from, a program of the public entity, or otherwise discriminating against a person on the basis of disability: "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs,or activities of a public entity, or be subjected to discrimination by any such entity."

144.    The term "disability" includes physical and mental impairments that substantially limit one or more major life activities.  42 U.S.C. § 12102(2).

145.    A qualified individual with a disability "means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2).

146.    Plaintiffs and members of the Class have mobility and vision disabilities that substantially limit one or more major life activities, or have a record of such impairments,

and therefore have a disability as defined by the ADA, 42 U.S.C. § 12102, and its

implementing regulations, 28 C.F.R. § 35.108.

147.    Plaintiffs and members of the Class are qualified to participate in

Defendants' pedestrian pathway program because they reside in or use the neighborhood's

pedestrian pathways.

148.    Defendants, named in their official capacities, are each a public entity as

defined by the ADA, 42 U.S.C. § 12131(1), and its implementing regulations, 28 C.F.R. §

35.104.

149.    Congress directed the Department of Justice ("DOJ") to write regulations

implementing Title II's prohibition against discrimination. 42 U.S.C. § 12134. Pursuant to

this mandate, the DOJ has issued regulations defining the forms of discrimination prohibited

by Title II of the ADA.  28 C.F.R. § 35.101 *et seq.*

150.    Title II of the ADA requires public entities, including Defendants, to operate

each of their programs, services or activities "so that, when viewed in its entirety, it is

readily accessible to and useable by individuals with disabilities." 28 C.F.R. § 35.150; *see

also* 28 C.F.R. §§ 35.149, 35.151.

151.    Pedestrian pathways, including sidewalks, curb cuts, and crosswalks,

constitute a program, service, or activity under Title II of the ADA. 28 C.F.R. § 35.104.

152.    Defendants have failed to provide the Plaintiffs and the Class meaningful

access to the pedestrian pathways within the East Mount Eden neighborhood, in violation of

Title II of the ADA.

153.    Defendants have failed to operate their pedestrian pathways program so that

it is readily accessible to individuals with mobility and vision disabilities when viewed in its

entirety, in violation of Title II of the ADA.

154.   Defendants fail to make reasonable modifications to their policies, practices, and procedures that are necessary to avoid discrimination against the Plaintiffs and the Class on the basis of their disabilities. 28 C.F.R. § 35.130(b)(7).

155.   The regulations implementing Title II of the ADA also require a public entity to maintain the features of all facilities required to be accessible under the ADA. 28 C.F.R. § 35.133.

156.   Facilities must be accessible to people with disabilities. 28 C.F.R. § 35.104.

157.   Defendants have failed and continue to fail to maintain accessible pedestrian pathways in the East Mount Eden neighborhood, including failing to fix deteriorating and broken sidewalks, failing to repair potholes in sidewalks, failing to remove protruding and/or moveable obstructions, failing to ensure sufficiently wide paths of travel on sidewalks, and failing to remove parked vehicles blocking the pedestrian pathways, among other failures to maintain accessible features of the pedestrian pathway program, in violation of Title II of the ADA.

158.   Defendants have also failed and continue to fail to maintain accessible features on the pedestrian pathways in the East Mount Eden neighborhood due to lack of adequate policies and procedures to 1) prevent pervasive obstruction such as garbage cans, and other obstacles and 2) ticket or tow parked vehicles that block and impede access to sidewalks, curb cuts and crosswalks.

159.   As a direct and proximate result of the aforementioned acts, the Named Plaintiffs suffered discrimination, unequal treatment, exclusion, violation of rights, loss of dignity, frustration, humiliation, emotional pain and suffering, anxiety, embarrassment,

physical pain, and unnecessary loss of rights, privileges, and property, among other harms.

160.    Defendants had knowledge of a substantial risk of harm to the Named

Plaintiffs in operating an inaccessible pedestrian pathway program and failed to act

appropriately on that risk, impeding the Named Plaintiffs' ADA right to accessible

pedestrian pathways.

161.    Defendants violate the rights of the Named Plaintiffs and the Class under

Title II of the ADA, 42 U.S.C. 12131, *et seq.*, and its implementing regulations.

162.    Defendants' conduct constitutes an ongoing and continuous violation of Title

II of the ADA and, as a result, Named Plaintiffs and the Class are entitled to declaratory and

injunctive relief, as well as reasonable attorneys' fees and costs.

163.    Because Defendants knowingly and recklessly acted with disregard for the

rights and wellbeing of the Named Plaintiffs, Named Plaintiffs are entitled to compensatory

and punitive damages.

164.    DRNY is entitled to relief under 42 U.S.C. § 12132 and 42 U.S.C. § 1983.

## SECOND CAUSE OF ACTION

### (Violation of Section 504 of the Rehabilitation Act)

165.    Plaintiffs re-allege and incorporate all previously alleged paragraphs.

166.    Section 504 provides that "[n]o otherwise qualified individual with a

disability… shall solely by reason of her or his disability, be excluded from the

participation in, be denied the benefits of, or be subjected to discrimination under any

program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

167.    The Named Plaintiffs and members of the Class have a mobility or visual

disability that substantially limit one or more major life activities, or have a record of such

impairments, and therefore have a disability for the purposes of Section 504 and its implementing regulations, 45 C.F.R. § 84.3(j).

168.    The Named Plaintiffs and members of the Class are qualified individuals with disabilities for purposes of Section 504 and its implementing regulations, 45 C.F.R. § 84.3(j).

169.    The Named Plaintiffs and members of the Class reside in or use the Defendants' pedestrian pathway program in the East Mount Eden neighborhood. Therefore, they are qualified to benefit from the Defendants' pedestrian pathways program.

170.    Defendants' operate programs or activities that receive federal financial assistance for purposes of Section 504, 29 U.S.C. § 794(b), and its implementing regulations, 45 C.F.R. § 84.3(k).

171.    By failing to provide an accessible pedestrian pathway program, Defendants' discriminate against the Named Plaintiffs and the Class members by denying them the opportunity to participate in or benefit from the East Mount Eden neighborhood.

172.    Defendants violate the rights of the Named Plaintiffs and the Class members under Section 504, 29 U.S.C. § 794, and its implementing regulations

173.    The acts and omissions described herein violate the equal access and nondiscrimination provisions of Section 504 and the regulations promulgated thereunder, and have resulted in injury to Plaintiffs.

174.    This conduct, unless enjoined, will continue to inflict injuries for which Plaintiffs have no adequate remedy at law.

175.    Defendants had knowledge of a substantial risk of harm to the Named Plaintiffs in operating an inaccessible pedestrian pathway program and failed to act

appropriately on that risk impeding the Named Plaintiffs' Section 504 right to accessible pedestrian pathways.

176.    As a proximate result of Defendants' violations of the Named Plaintiffs' rights under Section 504, the Named Plaintiffs suffered discrimination, unequal treatment, exclusion, violations of rights, loss of dignity, frustration, humiliation, emotional pain and suffering, anxiety, embarrassment, physical pain, and unnecessary loss of rights, privileges, and property, among other harms.

177.    The Named Plaintiffs and the Class are entitled to declaratory and injunctive relief, and reasonable attorneys' fees, expenses, and costs, pursuant to 29 U.S.C § 794(a) and 42 U.S.C. § 1983.

## THIRD CAUSE OF ACTION

### (Violation of the New York City Human Rights Law)

178.    Plaintiffs re-allege and incorporate herein all previously alleged paragraphs.

179.    The New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(4)(a) provides, "[i]t shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of the actual or perceived . . . disability . . . of any person directly or indirectly, to refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation."

180.    The term "person" in the NYCHRL includes "governmental bodies or agencies." N.Y.C. Admin. Code § 8-102(a).

181.    The Named Plaintiffs and members of the Class have mobility and vision disabilities that qualify them for protection under the NYCHRL. *Id.*

182.    The NYCHRL defines the term "place or provider of public accommodation" to include "providers, whether licensed or unlicensed, of goods, services, facilities, accommodations, advantages or privileges of any kind, and places, whether licensed or unlicensed, where goods, services, facilities, accommodations, advantages or privileges of any kinds are extended, offered, sold or otherwise made available."  N.Y.C. Admin. Code § 8-102(9).

183.    The City's pedestrian pathways, including those within the East Mount Eden neighborhood, are public accommodations within the meaning of the NYCHRL.

184.    The Named Plaintiffs and members of the Class reside in or use the Defendants' pedestrian pathway program in the East Mount Eden neighborhood. Therefore, they are qualified to benefit from the Defendants' pedestrian pathways program.

185.    By failing to provide an accessible pedestrian pathway program, Defendants' have denied Plaintiffs full and equal enjoyment, on equal terms and conditions access to its pedestrian pathways.

186.    Defendants have been aware since at least July 2020 that the sidewalks, curb cuts, and crosswalks in the East Mount Eden neighborhood are rife with accessibility barriers and hazards to individuals with mobility and vision disabilities.

187.    Defendants have failed to remedy the inaccessibility by repairing the damaged sidewalks, removing barriers that block access on sidewalks, creating safe accessible pathways around obstacles, or ticketing and towing unlawfully parked vehicles that block the pathways.

188.    Defendants' inaction has denied individuals with mobility and vision disabilities meaningful access to the streets and sidewalks of the East Mount Eden neighborhood.

189.    Defendants' conduct additionally violates N.Y.C. Administrative Code § 8-107(17), which states that "an unlawful discriminatory practice . . . is established . . . [when plaintiff] demonstrates that a policy or practice of a covered entity or a group of policies or practices of a covered entity results in a disparate impact to the detriment of any group protected by the provisions of this chapter."

190.    Defendants' policy or practice of refusing to ticket or tow unlawfully parked vehicles blocking the pedestrian pathways in the East Mount Eden neighborhood has a disparate negative impact on individuals with mobility and vision disabilities seeking to use the neighborhood's sidewalks and pedestrian street crossings.

191.    As a direct and proximate result of Defendants' violations of the NYCHRL, Plaintiffs have been injured as set forth herein.

192.    This conduct, unless enjoined, will continue to inflict injuries for which Plaintiffs have no adequate remedy at law.

193.    Plaintiffs are entitled to injunctive relief and reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs respectfully request that the Court:

1.  Assert subject matter jurisdiction over this action;

2.  Order that the Named Plaintiffs may maintain this action as a class action pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure and appoint the

undersigned as class counsel pursuant to Rule 23(g) of the Federal Rules of Civil

Procedure; Defendants' conduct as alleged herein as a violation of the rights of the

Named Plaintiffs, the Class members under: a) Title II of the ADA, 42 U.S.C. § 12101

*et seq.*; b) Section 504, 29 U.S.C. § 794; and c) NYCHRL, N.Y.C. Admin. Code § 8-

107 *et seq.*;

3. Order that the Plaintiff DRNY may maintain this action pursuant to 42 U.S.C. §

   15043(a)(2)(A)(i) and 42 U.S.C. § 10807;

4. Grant injunctive relief requiring Defendants to:

   a. Promptly remove vehicles parked in the pedestrian pathways along Mount

      Eden Mall, including within all intersections between Grand Concourse and

      Weeks Avenue;

   b. Immediately and meaningfully respond to reports of vehicles blocking the

      pedestrian pathways along Mount Eden Mall when made through 311 or

      directly to the NYC DOT or NYPD;

   c. Take necessary steps to ensure the pedestrian pathways along Mount Eden

      Mall become and remain accessible for people with mobility and vision

      disabilities; and

   d. Take necessary steps to ensure the pedestrian pathways in the East Mount Eden

      neighborhood comply with the minimum requirements set forth in the

      Americans with Disabilities Architectural Guidelines, as established by the

      United States Department of Justice.

5. Grant permanent injunctive relief requiring Defendants to:

   a. Establish and implement policies and practices to ensure that barriers to the

        pedestrian pathways are addressed timely;

    b.   Establish and implement policies and practices to ensure that Defendants do not discrimination against the Named Plaintiffs and the Class members, by denying them access to the pedestrian pathway program.

6.   Grant declaratory relief that Defendants have failed to comply with applicable laws prohibiting discrimination against the Named Plaintiffs and the Class, in violation of Title II of the ADA, 42 U.S.C. § 12131 *et seq.*; Section 504, 29 U.S.C. § 794; and the NYCHRL, N.Y.C. Admin. Code § 8-107 *et seq.*;

7.   Retain jurisdiction over Defendants until such time as this Court is satisfied that Defendants have implemented and sustained this injunctive relief;

8.   Award Named Plaintiffs Leon and Diaz compensatory and punitive damages;

9.   Award reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1920, 42 U.S.C. § 12205, 42 U.S.C. § 1988, and Federal Rules of Civil Procedure 23(e) and (h); and

10. Grant such other relief as the Court may deem just and proper.

Dated: June 1, 2022

By: *Christina Asbee*

Christina Asbee
DISABILITY RIGHTS NEW YORK
25 Chapel Street, Ste. 1005
Brooklyn, New York 11201
(518) 432-7861
Christina.Asbee@DRNY.org

Jennifer Monthie
DISABILITY RIGHTS NEW YORK
25 Chapel Street, Ste. 1005
Brooklyn, New York 11201
(518) 432-7861
Jennifer.Monthie@DRNY.org

*Attorneys for Plaintiffs*