UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

DISABILITY RIGHTS NEW YORK, CARLOS LEON
AND STEPHANIE DIAZ, on behalf of themselves and all
others similarly situated,

                    Plaintiffs,

      -against-                                             22-CV-04493 (ER)

THE CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, NEW YORK CITY DEPARTMENT OF
TRANSPORTATION, ERIC ADAMS, in his official
capacity as Mayor of the City of New York, KEECHANT
L. SEWELL, in her official capacity as Commissioner of
the New York City Police Department, and YDANIS
RODRIGUEZ, in his official capacity as Commissioner of
the New York City Department of Transportation,

                    Defendants.

------------------------------------------------------------------------ x

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS

HON. SYLVIA O. HINDS-RADIX
Corporation Counsel of the
    City of New York
Attorney for Defendants
100 Church Street
New York, New York 10007

September 15, 2022

MICHELLE GOLDBERG-CAHN,
SHERRILL KURLAND, and
JACQUELINE HUI,
           Of Counsel.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................... I

PRELIMINARY STATEMENT ................................................ 1

STANDARD FOR JUDGMENT ON THE PLEADINGS ............................ 3

RELEVANT STATEMENT OF FACTS ....................................... 4

ARGUMENT

      POINT I

            PLAINTIFFS' CLAIMS AGAINST NYPD AND
            DOT; AND ADAMS, SEWELL AND
            RODRIGUEZ, IN THEIR OFFICIAL
            CAPACITIES, SHOULD BE DISMISSED ................................ 6

      POINT II

            THIS COURT LACKS JURISDICTION TO
            ENTERTAIN PLAINTIFFS' CLAIMS ARISING
            FROM THE COVID-19 PERMITS, WHICH ARE
            NOW MOOT ..................................................... 7

            A. Title II of the ADA and Section 504 of the
            Rehabilitation Act ........................................... 7

            B. Since the COVID-19 Permits Expired on June
            30, 2022, Plaintiffs' Claims Based Upon
            Allegations that the COVID-19 Permits Created
            an Alleged Pattern of Illegal Parking that
            Violated the ADA and the Rehabilitation Act are
            Moot ....................................................... 8

      POINT III

            THE COMPLAINT FAILS TO STATE A CLAIM
            FOR RELIEF IN THE NATURE OF
            MANDAMUS .................................................. 10

      POINT IV

            PLAINTIFFS' CLAIMS AND ISSUES
            ALLEGING THAT PEDESTRIAN RAMPS

VIOLATE THE ADA AND THE
REHABILITATION ACT ARE BARRED BY *RES
JUDICATA* AND THE DOCTRINE OF
COLLATERAL ESTOPPEL ...................................................13

    A. The <u>EPVA/CIDNY</u> Settlement Agreement is
a Valid Final Judgment ...................................................... 13

    B. Plaintiffs are Members of the Certified Class
in the <u>EPVA/CIDNY</u> Class Actions and are
Bound by the <u>EPVA/CIDNY</u> Settlement
Agreement........................................................................... 14

    C. Plaintiffs' Claims Alleging Inaccessible Curb
Ramps Were Already Litigated in the
<u>EPVA/CIDNY</u> Class Actions and are Thus
Precluded............................................................................ 15

    D. In the Alternative, Plaintiffs Are Also Barred
by Collateral Estoppel from Relitigating the
Issues Decided in the <u>EPVA/CIDNY</u> Class
Actions ............................................................................... 18

POINT V

    PLAINTIFFS' VAGUE ALLEGATIONS
CONCERNING CONDITIONS AND
OBSTRUCTIONS ON THE SIDEWALKS FAIL
TO STATE A CAUSE OF ACTION UNDER THE
ADA OR THE REHABILITATION ACT ..............................21

POINT VI

    THIS COURT SHOULD NOT EXERCISE
SUPPLEMENTAL JURISDICTION OVER
PLAINTIFFS' NYCHRL CLAIM ..........................................22

CONCLUSION........................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Vargas v. City of New York,
  2007 U.S. Dist LEXIS 96308 (S.D.N.Y. 2007)........................................................................19

Abrams v. New York City Transit Auth.,
  39 N.Y.2d 990 (1976) ...............................................................................................................13

Ad-Hoc Comm. of the Baruch Black & Hispanic Alumni Ass'n v. Bernard M.
  Baruch Coll.,
  835 F.2d 980 (2d Cir. 1987).......................................................................................................3

Alcantara v. City of New York,
  646 F. Supp. 2d 449 (S.D.N.Y. 2009).........................................................................................7

Amalgamated Sugar Co. v. NL Industrs., Inc.,
  825 F.2d 634 (2d Cir. 1987).....................................................................................................14

Arizonans for Official English v. Arizona,
  520 U.S. 43 (1997).....................................................................................................................9

Ashcroft v. Iqbal,
  556 U.S. 662 (2009)...................................................................................................................3

Bank of N.Y. v. First Millennium, Inc.,
  607 F.3d 905 (2d Cir. 2010).....................................................................................................19

Bascom v. Brooklyn Hosp.,
  2018 U.S. Dist. LEXIS 32685 (E.D.N.Y. Feb. 26, 2018)......................................................4, 5

Bell Atlantic Corp. v. Twombly,
  550 U.S. 544 (2007)...................................................................................................................3

Birch v. Pioneer Credit Recovery, Inc.,
  2007 U.S. Dist. LEXIS 41834 (W.D.N.Y. June 8, 2007)...................................................23, 25

Cain v. Rambert,
  2014 U.S. Dist. LEXIS 74188 (E.D.N.Y. May 30, 2014) ........................................................24

Campbell-Ewald Co. v. Gomez,
  577 U.S. 153 (2016)...................................................................................................................9

Canales v. New York City Health & Hosps. Corp.,
  2014 U.S. Dist. LEXIS 77037 (S.D.N.Y. May 12, 2014)........................................................24

Castellano v. Bd. of Trs. of Police Officers' Variable Supplements Fund,
    937 F.2d 752 (2d Cir. 1991)......................................................................................23

Center for Independence of the Disabled, New York et al. v. The City of New
    York et al.,
    14 Civ. 5884 (S.D.N.Y.) ...............................................................................................2

Chambers v. Time Warner,
    282 F.3d 147 (2d Cir. 2002)..........................................................................................4

Clarkson v. Coughlin,
    898 F. Supp. 1019 (S.D.N.Y. 1995)..............................................................................8

Cox v. Secretary of Labor,
    739 F. Supp. 28 (D.D.C. 1990) ....................................................................................11

D'Amico v. New York State Bd. of Law Examiners,
    813 F.Supp 217 (W.D.N.Y. 1993) ................................................................................7

Davidson v. Flynn,
    32 F.3d 27 (2d Cir. 1994)..............................................................................................3

DeShaney v. Winnebago County Dep't of Social Servs.,
    489 U.S. 189 (1988).....................................................................................................12

DiFolco v. MSNBC Cable LLC,
    622 F.3d 104 (2d Cir. 2010)..........................................................................................4

Eastern Paralyzed Veterans Association v. The City of New York,
    94 Civ. 0435 (S.D.N.Y.) ...............................................................................................2

Echevarria v. Dep't of Corr. Servs. of New York City,
    48 F. Supp. 2d 388 (S.D.N.Y. 1999).............................................................................7

Fed. Elec. Comm'n v. Wisc. Right to Life, Inc.,
    551 U.S. 449 (2007).......................................................................................................9

Friends of the Earth, Inc. v. Laidlaw Envt'l Servs, Inc.,
    528 U.S. 167 (2000).......................................................................................................9

Grandon v. Merrill Lynch & Co.,
    147 F.3d 184 (2d Cir. 1998)..........................................................................................3

Harper v. Angiolillo,
    89 N.Y.2d 761 (1997) ..................................................................................................11

In re Joint E. & S. Dist. Asbestos Litig.,
    78 F.3d 764 (2d Cir. 1996)...........................................................................................16

Jones v. Beame,
    45 N.Y.2d 402 (1978) ...................................................................................13

Jones v. Dep't of Hous. Preserv. and Dev.,
    2007 U.S. Dist. LEXIS 15417 (S.D.N.Y. 2007) .........................................6

Kingdomware Techs., Inc. v. U.S.,
    136 S. Ct. 1969 (2016) ................................................................................10

Knox v. Serv. Empls. Int'l Union, Local 1000,
    567 U.S. 298 (2012) ......................................................................................9

Kolari v. Vail,
    455 F.3d 117 (2d Cir. 2006) .......................................................................23

Kornblau v. Dade County,
    86 F.3d 193 (11th Cir. 1996) ........................................................................8

Kramer v. Time Warner, Inc.,
    937 F.2d 767 (2d Cir. 1991) .........................................................................4

Lincoln CERCPAC v. Health & Hosps. Corp.,
    147 F.3d 165 (2d Cir. 1998) .........................................................................9

Macera v. Vill. Bd. of Ilion,
    2019 U.S. Dist. LEXIS 169632 (N.D.N.Y. 2019) .....................................12

Marcus v. AT&T Corp.,
    138 F.3d 46 (2d Cir. 1998) .........................................................................23

Matusick v. Erie County Water Auth.,
    757 F.3d 31 (2d Cir. 2014) .........................................................................20

Menes v. City University of New York Hunter College,
    578 F. Supp. 2d 598 (S.D.N.Y. 2008) .......................................................24

Minima v. New York City Employees' Ret. Sys.,
    2012 U.S. Dist. LEXIS 130955 (E.D.N.Y. Aug. 17, 2012) .......................11

Muhammad v. Warithu-Deen Umar,
    98 F. Supp. 2d 337 (W.D.N.Y. 2000) ........................................................21

N.Y. State Rifle & Pistol Assn. v. City of N.Y.,
    140 S.Ct. 1525 (2020) ..................................................................................9

Norman v. Niagara Mohawk Power Corp.,
    873 F.2d 634 (2d Cir. 1989) ..........................................................16, 17, 19

P.C. v. McLaughlin et al.,
    913 F.2d 1033 (2d Cir. 1990)......................................................................8

Pleasant View Baptist Church v. Beshear,
    838 Fed. App'x 936 (6th Cir. 2020) ............................................................9

Rodriguez by Rodriguez v. City of New York,
    197 F.3d 611 (2d Cir. 1999).......................................................................8

Rodriguez v. Knapp,
    2012 U.S. Dist. LEXIS 157296 (E.D.N.Y. Nov. 1, 2012).........................6

Sacay v. Research Found.,
    44 F. Supp. 2d 496 (E.D.N.Y. 1999) ........................................................24

Simon v. Kidera,
    2012 U.S. Dist. LEXIS 1660 (E.D.N.Y. Jan. 4, 2012) ..............................6

Smith v. Bayer,
    131 S. Ct. 2368 (2011)..............................................................................15

St. Pierre v. Dyer,
    208 F.3d 394 (2d Cir. 2000).......................................................................17

Sure-Snap Corp. v. State St. Bank & Trust Co.,
    948 F.2d 869 (2d Cir. 1991)................................................................16, 18

Sussle v. Sirina Prot. Sys. Corp.,
    269 F. Supp. 2d 285 (S.D.N.Y. 2003)...................................................24, 25

The Alliance to End Chickens as Kaporos v. New York City Police Dep't,
    32 N.Y.3d 1091 (2018) ..............................................................................12

Town of Castle Rock, Colo. V. Gonzales,
    545 U.S. 748 (2005)...................................................................................12

Traynor v. Turnage,
    485 U.S. 535 (1988)....................................................................................8

Trump v. Hawaii,
    138 S. Ct. 377 (2017).................................................................................9

Uzdavines v. Weeks Marine, Inc.,
    418 F.3d 138 (2d Cir. 2005)..................................................................20, 21

Valencia v. Lee,
    316 F.3d 299 (2d Cir. 2003).......................................................................25

Vandor, Inc. v. Militello,
    301 F.3d 37 (2d Cir. 2002)..........................................................................11

Waldman v. Village of Kyras Joel,
    39 F. Supp. 2d 370 (2d Cir. 1999) .......................................14, 16, 17, 18

Wolf v. United States FBI,
    2018 U.S. Dist. LEXIS 13188 ..................................................................11

Wolfert v. Transamerica Home First, Inc.,
    439 F.3d 165 (2d Cir. 2005).................................................................15, 16

Woods v. Dunlop Tire Corp.,
    972 F.2d 36 (2d Cir. 1992)........................................................................16

Ximines v. George Wingate High Sch.,
    516 F.3d 156 (2d Cir. 2008).......................................................................6

Young v. Town of Huntington,
    121 A.D.2d 641 (2d Dep't 1986) ..............................................................12

**Statutes and Rules**                                                                          **Pages**

8 U.S.C. § 1367(c)(3)................................................................................................23

29 U.S.C. § 701........................................................................................................8

42 U.S.C. § 12101................................................................................................7, 8

42 U.S.C. § 12131(2)...............................................................................................15

42 U.S.C. § 12312...................................................................................................8

ADA ............................................................................................................... *passim*

Mandamus Act, 28 U.S.C. § 1361 .........................................................................11

New York City Human Rights Law or NYCHRL................................................ *passim*

Rehabilitation Act of 1973 .................................................................................. *passim*

Rehabilitation Act of 1973 Section 504 ............................................................... *passim*

**Other Authorities**

Emergency Executive Order No. 98 ...........................................................................4

Fed. R. Evid. 201(b) ................................................................................................4

FRCP Rule 12(c)..................................................................................................1, 3

FRCP Rule 12(b)(6)..............................................................................................3, 4

FRCP Rule 17(b)(2)..................................................................................................6

FRCP Rule 23(b)(2)..................................................................................................15

H. R. Rep. No. 101-485(II), 101st Cong., 2d Sess. 84 (1990)......................................8

New York City Administrative, Title 19 .............................................................4, 22, 23

New York City Charter, Section 2903 ......................................................................4

New York Civil Practice Law and Rules §§ 7801 et seq...........................................11

**DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION FOR
JUDGMENT ON THE PLEADINGS**

Defendants City of New York, New York City Police Department ("NYPD"),

New York City Department of Transportation ("DOT"), Eric Adams ("Adams"), in his official

capacity as Mayor of the City of New York, Keechant L. Sewell ("Sewell"), in her official

capacity as Commissioner of NYPD, New York City Police Department, and Ydanis Rodriguez

("Rodriguez"), in his official capacity as Commissioner of DOT (collectively "Defendants") by

their attorney, Hon. Sylvia Hinds-Radix, Corporation Counsel of the City of New York, submit

this Memorandum of Law in support of their motion for judgment on the pleadings pursuant to

Rule 12(c) of the Federal Rules of Civil Procedure ("FRCP"), seeking dismissal of the

Complaint.

## PRELIMINARY STATEMENT

In this putative class action, Plaintiffs – a disability rights advocacy organization

and two individuals with disabilities that reside at 1560 Grand Concourse, Bronx, New York –

seek injunctive relief and damages for Defendants' alleged violations of Title II of the American

with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation

Act") and the New York City Human Rights Law ("NYCHRL").  Plaintiffs' claims primarily

stem from allegations that illegal parking in the Mount Eden Mall area in the Bronx ("Mt. Eden

Mall area") blocks accessibility of the sidewalks and crosswalks.  Specifically, Plaintiffs allege

that DOT's issuance of parking permits to hospitals and other critical healthcare providers for

distribution to their frontline staff who were providing essential public health services during the

height of the pandemic ("COVID-19 Permits") resulted in an alleged pattern of illegal parking

that blocked the sidewalks and crosswalks, and that there was an alleged lack of enforcement

action by the Defendants against all illegally parked vehicles in the Mt. Eden Mall area.  Further,

Plaintiffs also appear to raise claims alleging inaccessible sidewalks and pedestrian ramps[1] in the Mt. Eden Mall area.

The Complaint fails to state a claim upon which relief can be granted.  First, any claims against NYPD, DOT, Adams, in his official capacity as Mayor of the City of New York, Sewell, in her official capacity as the Commissioner of NYPD and Rodriguez, in his official capacity as the Commissioner of DOT, fail because they are not suable entities.  Second, Plaintiffs' allegations that the COVID-19 Permits created an alleged pattern of illegal parking on sidewalks and crosswalks in the Mt. Eden Mall area are moot since all such permits expired on June 30, 2022.  Third, the Complaint fails to state a claim demanding enforcement of certain unspecified laws or rules in the nature of mandamus.  Fourth, to the extent that the Complaint alleges that pedestrian ramps do not comply with the ADA and Rehabilitation Act, such claims are barred by *res judicata*; or, in the alternative, these issues are precluded, in whole or in part, by the operation of collateral estoppel, since those issues were fully and fairly litigated in Eastern Paralyzed Veterans Association v. The City of New York, 94 Civ. 0435 (S.D.N.Y.) (the "EPVA Action") and Center for Independence of the Disabled, New York et al. v. The City of New York et al., 14 Civ. 5884 (S.D.N.Y.) (the "CIDNY Action") (collectively the "EPVA/CIDNY Class Actions") and resulted in class action settlements.  In addition, Petitioners' bare-bone allegations concerning conditions and obstructions on the sidewalks fail to state a cause of action under the ADA or the Rehabilitation Act.  Finally, because Plaintiffs fail to state a federal claim against Defendants, this Court should decline to exercise supplemental jurisdiction regarding Plaintiff's only state claim that Defendants violated NYCHRL.

---

[1] The term "pedestrian ramp," which is used interchangeably with the term "curb ramp," means any ramp, cut or slope where a pedestrian walkway crosses a curb.

Defendants hereby move for judgment on the pleadings, pursuant to FRCP Rule 12(c), on the grounds that the Complaint has failed to state a claim upon which relief can be granted.  Defendants' Motion for Judgment on the Pleadings should be granted.

## STANDARD FOR JUDGMENT ON THE PLEADINGS

The standard for granting a motion for judgment on the pleadings brought under Rule 12(c) of the FRCP is indistinguishable from the standard of review for a motion to dismiss pursuant to FRCP Rule 12(b)(6).  See Ad-Hoc Comm. of the Baruch Black & Hispanic Alumni Ass'n v. Bernard M. Baruch Coll., 835 F.2d 980, 982 (2d Cir. 1987).  Pursuant to FRCP Rule 12(b)(6), on a motion to dismiss, the Court is required to accept the material facts alleged in the complaint as true and to construe all reasonable inferences in favor of the nonmoving party.  See Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998); Davidson v. Flynn, 32 F.3d 27, 29 (2d Cir. 1994).

To overcome a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  See also Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) (holding that a motion to dismiss should be granted where a complaint fails to plead enough facts to state a claim that is plausible on its fact).  Pleadings must contain more than "labels and conclusions," a "formulaic recitation of the elements of a cause of action," and "naked assertions" without "further factual enhancement."  Iqbal, 556 U.S. at 6.

In assessing a motion to dismiss under Rule 12(b)(6), a court may look not just to the facts alleged in the complaint, but also to documents attached thereto or incorporated by reference, documents that are "integral" to a plaintiff's claims – even when they are not explicitly incorporated or incorporated by reference – as well as matters of public record, documents in plaintiff's possession, or documents that the plaintiff knew of or relief upon upon

in bringing suit.  Chambers v. Time Warner, 282 F.3d 147, 152-53 (2d Cir. 2002).  In addition, the Court may take judicial notice of facts that are "generally known within the territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); see also DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010); Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts… not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related findings"); Bascom v. Brooklyn Hosp., 2018 U.S. Dist. LEXIS 32685, at *13 (E.D.N.Y. Feb. 26, 2018) ("Accordingly, the Court can consider the state-court records and entertain defendants' *res judicata* argument upon this Rule 12(b)(6) motion").

## RELEVANT STATEMENT OF FACTS

### COVID-19 Permits

In response to the COVID-19 pandemic and pursuant to DOT's legal authority under Section 2903 of the New York City Charter ("City Charter") and Title 19 of the New York City Administrative Code ("Administrative Code"), as well as the Emergency Executive Orders issued by Mayor de Blasio following the declaration of emergency by former New York State Governor Andrew Cuomo,[2] DOT initiated a program for the issuance of on-street parking permits to hospitals and other critical healthcare providers (COVID-19 Permits) for distribution to frontline staff during the COVID-19 crisis.

Essential healthcare workers applied to their hospital or health care administrator to obtain COVID-19 Permits, which included information such as the name of the health care facility, make, model and plate of vehicle, and valid locations where to park.  See Declaration of

---

[2] On March 12, 2020, Emergency Executive Order No. 98 declared a state of emergency in New York City.

Jacqueline Hui, dated September 15, 2022 ("Hui Decl."), Exhibit "C."[3]  The COVID-19 Permits allowed the permittees to park at any "metered parking space (Passenger or Commercial) without charge," "'No Parking' space" or "sign indicating street cleaning regulations (sign with a broom symbol)" and "MD Plate Parking Only Zones" and "[i]n any space designated 'Truck Loading Only.'"  See id. COVID-19 Permits did not allow permittees to park, inter alia, in "Fire Zones, Bus Stops, Taxi stands, driveways, crosswalks or sidewalks."  See Exhibits "C" and "D."

All COVID-Permits expired on June 30, 2022.  See Exhibits "E" and "F."  Any vehicles displaying COVID-Permits after that date would be subject to ticketing, booting, or towing.  See id. Parking violations received while using the COVID-19 Permits after June 30, 2022 would not be subject to dismissal and were required to be paid.  See id.

**EPVA/CIDNY Class Actions**

The EPVA/CIDNY Class Actions cases both alleged, *inter alia*, that the City failed to comply the ADA and the Rehabilitation Act by failing to provide accessible curb ramps. The EPVA case was first settled as a Class Action in 2002, and subsequently re-settled jointly with the CIDNY case in 2019.  The comprehensive 2019 Class Action settlement governs all curb ramps in New York City, and provides relief to the class members through a specific remedial plan ("EPVA/CIDNY Settlement Agreement").   See Exhibit "J"

Compliance under the EPVA/CIDNY Settlement Agreement is on-going and provides specific remedies to class members for non-compliance under the Settlement Agreement.   Id.  The EPVA/CIDNY Settlement Agreement provides for a court appointed monitor, who is tasked with overseeing compliance for at least 15 years.  See Exhibits "L" and "M."

_____

[3] Unless otherwise indicated, all exhibits referenced herein are annexed to the accompanying Hui

## ARGUMENT

### POINT I

### PLAINTIFFS' CLAIMS AGAINST NYPD AND DOT; AND ADAMS, SEWELL AND RODRIGUEZ, IN THEIR OFFICIAL CAPACITIES, SHOULD BE DISMISSED

Plaintiffs name NYPD, DOT, Adams, in his official capacity as Mayor of the City of New York, Sewell, in her official capacity as the Commissioner of NYPD and Rodriguez, in his official capacity as the Commissioner of DOT, and any claims against them necessarily fail. See Exhibit "A" (Compl.).

Section 396 of the City Charter states that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."  Accordingly, "[t]hat provision has been construed to mean that New York City departments and agencies… as distinct from the City itself, lack the capacity to be sued."  Simon v. Kidera, 2012 U.S. Dist. LEXIS 1660, at *4 (E.D.N.Y. Jan. 4, 2012).  See also FRCP Rule 17(b)(2); Ximines v. George Wingate High Sch., 516 F.3d 156, 160 (2d Cir. 2008); Jones v. Dep't of Hous. Preserv. and Dev., 2007 U.S. Dist. LEXIS 15417, at n.5 (S.D.N.Y. 2007).  Since DOT and NYPD are non-suable entities, all claims against them must be dismissed.

In addition, Plaintiffs' claims against Adams, in his official capacity as Mayor of the City of New York, Sewell, in her official capacity as the Commissioner of NYPD, and Rodriguez, in his official capacity as the Commissioner of DOT, are also without any merit.  A claim against a municipal official in his or her official capacity is considered no different than a claim against the municipality itself.  See Rodriguez v. Knapp, 2012 U.S. Dist. LEXIS 157296,

Decl.

at *9 (E.D.N.Y. Nov. 1, 2012) (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)); see also Echevarria v. Dep't of Corr. Servs. of New York City, 48 F. Supp. 2d 388, 392 n.6 (S.D.N.Y. 1999) (stating that Section 1983 claims against municipal officials in their official capacity are to be treated as claims against the municipality itself); Alcantara v. City of New York, 646 F. Supp. 2d 449, 462 n.3 (S.D.N.Y. 2009).  Thus, Plaintiffs' claims against Adams, Sewell and Rodriguez, in their official capacities, should be deemed to be a suit against the City of New York and subject to the legal analysis for establishing municipal liability.  For these reasons, Plaintiffs' claims against NYPD and DOT; and Adams, Sewell and Rodriguez, in their official capacities, should all be dismissed.

## POINT II

### THIS COURT LACKS JURISDICTION TO ENTERTAIN PLAINTIFFS' CLAIMS ARISING FROM THE COVID-19 PERMITS, WHICH ARE NOW MOOT

In the Complaint, Plaintiffs appear to seek permanent injunctive relief based on their allegations that the COVID-19 Permits created an alleged pattern of illegal parking on sidewalks and crosswalks in the Mt. Eden Mall area that violated Title II of the ADA and § 504 of the Rehabilitation Act.  See Exhibit "A" (Compl.) at ¶¶ 130-31.  Since the COVID-19 Permits expired on June 30, 2022, see Exhibits "E" and "F," these claims are now moot and this Court lacks jurisdiction to entertain such claims.

### A.      Title II of the ADA and Section 504 of the Rehabilitation Act

The ADA was passed by Congress in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  42 U.S.C. § 12101.  The ADA was enacted "to place those with disabilities on an equal footing" with non-disabled individuals.  D'Amico v. New York State Bd. of Law Examiners, 813 F.Supp

217, 221 (W.D.N.Y. 1993).   The intent of the ADA was not, however, to create an "unfair advantage" for individuals with disabilities.   Id.   See also Kornblau v. Dade County, 86 F.3d 193, 194 (11th Cir. 1996).

In passing the ADA, Congress found that forty-three million Americans have one or more physical or mental disabilities and that these individuals have been discriminated against in a number of areas, including with respect to access to public services. 42 U.S.C. § 12101(a). Title II of the ADA addresses discrimination in the participation or receipt of benefits of public services, programs, or activities.[4]

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefit of the services, programs, or activities of a public entity." Id. at § 12312.   The Rehabilitation Act, 29 U.S.C. § 701, was designed to prevent unfounded prejudices against individuals with disabilities from interfering with those individuals' rights to enjoy the same privileges and duties afforded to all United States citizens.  Traynor v. Turnage, 485 U.S. 535, 548 (1988); P.C. v. McLaughlin et al., 913 F.2d 1033 (2d Cir. 1990).  Title II of the ADA was intended to extend the provisions of the Rehabilitation Act of 1973 to all state and local government programs and services irrespective of federal funding.  See H. R. Rep. No. 101-485(II), 101st Cong., 2d Sess. 84 (1990); See also Clarkson v. Coughlin, 898 F. Supp. 1019 (S.D.N.Y. 1995).  Because   Section 504 of the Rehabilitation Act and the ADA impose identical requirements, the Courts generally consider those claims in tandem.  See Rodriguez by Rodriguez v. City of New York, 197 F.3d

---

[4] Title I and Title III of the ADA, which are not applicable in the present case, address employment discrimination against individuals with disabilities and discrimination against individuals with disabilities in public accommodations and services operated by private entities, respectively.

611 (2d Cir. 1999); Lincoln CERCPAC v. Health & Hosps. Corp., 147 F.3d 165, 167 (2d Cir.

1998).

**B.      Since the COVID-19 Permits Expired on June 30, 2022, Plaintiffs' Claims Based Upon Allegations that the COVID-19 Permits Created an Alleged Pattern of Illegal Parking that Violated the ADA and the Rehabilitation Act are Moot**

Mootness is a jurisdictional doctrine that ensures federal courts only decide live

cases or controversies.   See Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 160 (2016).

Mootness is "standing set in a time frame:  The requisite personal interest that must exist at the

commencement of the litigation (standing) must continue throughout its existence (mootness)."

Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997).  A matter becomes moot –

and the Court loses jurisdiction – "when it is impossible for a court to grant any effectual relief

whatsoever to the prevailing party."   Knox v. Serv. Empls. Int'l Union, Local 1000, 567 U.S.

298, 307 (2012).   Here, since "it is impossible for a court to grant any effectual relief" to

Plaintiffs who are seeking permanent injunctive relief with respect to their claims regarding the

COVID-19 Permits because they expired on June 30, 2022 (see Exhibits "D" and "E"), these

claims should be dismissed as moot.  See Knox, 567 U.S. at 307.

Once a law is off the books and replaced with a "new rule," a suit challenging the

original law is moot, "leaving [the Court] with an absence of jurisdiction to adjudicate the case."

Pleasant View Baptist Church v. Beshear, 838 Fed. App'x 936, 938 (6th Cir. 2020); see also

N.Y. State Rifle & Pistol Assn. v. City of N.Y., 140 S.Ct. 1525, 1526 (2020); Trump v. Hawaii,

138 S. Ct. 377, 377 (2017).  For a defendant to successfully moot out a case, it must show that it

is clear the allegedly wrongful behavior could not "reasonably be expected to recur" and is not

one "capable of repetition yet evading review."   Fed. Elec. Comm'n v. Wisc. Right to Life, Inc.,

551 U.S. 449, 462 (2007); Friends of the Earth, Inc. v. Laidlaw Envt'l Servs, Inc., 528 U.S. 167,

190 (2000).  A law is "capable of repetition yet evading review" when: (1) "the challenged

action [is] in its duration too short to be fully litigated prior to cessation or expiration," and (2) "there [is] reasonable expectation that the [plaintiff will] be subject to the same action again." Kingdomware Techs., Inc. v. U.S., 136 S. Ct. 1969, 1976 (2016) (Instructing that "exception applies only in exceptional situations").

Here, since the COVID-19 Permits were set to expire on June 30, 2022 in light of the changes in the state of emergency (and not terminated to evade review), DOT's program of issuing these permits to hospitals and other critical healthcare providers for distribution to their frontline staff, who were providing essential public health services during the height of the pandemic, is not capable of repetition. See Exhibits "E" and "F."  As such, Plaintiffs' claims that the COVID-19 Permits created an alleged pattern of illegal parking by third parties that blocked sidewalks and crosswalks in the Mt. Eden Mall area that violated the ADA and the Rehabilitation Act are moot.  Furthermore, Plaintiffs' claims that Defendants failed to immediately and routinely take specific enforcement action against every vehicle parked illegally in the Mt. Eden Mall area because of this alleged pattern of illegal parking by third parties created by the COVID-19 Permits are now moot and should be dismissed since the COVID-19 Permits are now expired.

## POINT III

## THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF IN THE NATURE OF MANDAMUS

The Complaint fails to state a cause of action under Title II of the ADA and the § 504 of the Rehabilitation Act demanding enforcement of certain unspecified laws or rules in the nature of mandamus.  Here, Plaintiffs allege that Defendants' failure to immediately and routinely enforce unspecified laws and rules against every vehicle parked illegally by third parties on the sidewalks and streets in the Mt. Eden Mall area violates Title II of the ADA and

-10-

§ 504 of the Rehabilitation Act.  See Exhibit "A" (Compl.) at ¶¶ 54, 30-31. This claim, which seeks relief in the nature of mandamus, should be dismissed.

Under the Mandamus Act, 28 U.S.C. § 1361, "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  "The jurisdiction of federal courts does not extend to lawsuits seeking to compel actions by city officers and employees; federal courts may compel only <u>federal</u> officers to act.  See <u>Minima v. New York City Employees' Ret. Sys.</u>, 2012 U.S. Dist. LEXIS 130955 *15 (E.D.N.Y. Aug. 17, 2012).  The Second Circuit has noted that a proceeding pursuant to Article 78 of the New York Civil Practice and Rules ("CPLR") is the appropriate vehicle for obtaining an order directed to a local official. See <u>Vandor, Inc. v. Militello</u>, 301 F.3d 37, 39 (2d Cir. 2002) (<u>citing</u> CPLR §§ 7801 et seq.).

Moreover, it is well-settled that a writ of mandamus is not available to compel discretionary acts, which includes the enforcement of laws and rules and the allocation of resources.  See <u>Wolf v. United States FBI</u>, 2018 U.S. Dist. LEXIS 13188 *6 ("Accordingly, courts have uniformly – and correctly – denied mandamus relief where, as here, a party has sought to compel the FBI to investigate or prosecute alleged criminal activity."); <u>Cox v. Secretary of Labor</u>, 739 F. Supp. 28, 30 (D.D.C. 1990).  Further, as this Court stated in its order denying Plaintiffs' motion for a temporary restraining order and preliminary injunction (Docket #16): "It is patently not the province of courts to get involved with directing other governmental agencies on matters affecting their discretion to carry out their activities."  See Docket #39 at 26:3-6.

Under New York law, a party seeking an order in the nature of mandamus must demonstrate a clear legal right to the relief sought. See CPLR § 7801 et seq.; <u>Harper v.</u>

Angiolillo, 89 N.Y.2d 761, 765 (1997).  Like a petitioner in a mandamus proceeding in state court, Plaintiffs here have failed to meet their burden of establishing entitlement to such extraordinary relief.  It is well-settled that mandamus is not available for the performance of discretionary acts by government officers, including the enforcement of traffic and parking laws and rules.  See Macera v. Vill. Bd. of Ilion, 2019 U.S. Dist. LEXIS 169632 *37 (N.D.N.Y. 2019) ("Plaintiffs have no legal entitlement to the enforcement of local zoning or traffic laws") (citing DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 195 (1988)); Young v. Town of Huntington, 121 A.D.2d 641, 642 (2d Dep't 1986) (holding that "the decision to enforce… [town building and zoning] codes rests in the discretion of the public officials charged with enforcement.").  Because law enforcement officials require significant discretion to execute their duties, the Supreme Court has held that there is no clear entitlement to law enforcement action.  See DeShaney, 489 U.S. at 195; Town of Castle Rock, Colo. V. Gonzales, 545 U.S. 748, 761 (2005) ("It is common sense that all police officers must use some discretion in deciding when and where to enforce city ordinances.").  As the New York State Court of Appeals recently reiterated, not only is it improper to compel specific enforcement action, but to compel the discretion to be exercised in a specific manner and with specific results, See The Alliance to End Chickens as Kaporos v. New York City Police Dep't, 32 N.Y.3d 1091, 1092 (2018) ("Enforcement of the laws cited by plaintiffs would involve some exercise of discretion. [Citation omitted].  Moreover, plaintiffs do not seek to compel the performance of ministerial duties, but rather seek to compel a particular outcome.").  Plaintiffs here are seeking to compel a particular outcome, i.e., the issuance of summonses and the towing of illegally parked vehicles in the Mt. Eden Mall area, which is not an appropriate function of the Court. See Exhibit "A" (Compl.) at ¶¶ 130-31.

Further, determinations as to agency priorities, as well as the allocation of resources, fall within the sole province of the legislature and the elected officials of State and local government.  Involvement of the court in such matters "would violate the constitutional scheme for the distribution of powers among the three branches of government and involve the judicial branch in responsibilities it is ill-equipped to assume."  Jones v. Beame, 45 N.Y.2d 402 (1978).  See also Abrams v. New York City Transit Auth., 39 N.Y.2d 990, 991 (1976) (holding that "questions of judgment, discretion, allocation of resources and priorities inappropriate for resolution in the judicial arena are lodged in a network of executive officials, administrative agencies and local legislative bodies.").

Here, Plaintiffs fail to state a claim to compel the discretionary act of requiring Defendants to immediately and routinely issue summonses and tow vehicles illegally parked by third parties in the Mt. Eden Mall area.  As such, Plaintiffs' claims of Defendants' alleged lack of enforcement to stem illegal parking in the Mt. Eden Mall area violated Title II of the ADA and Section 504 of the Rehabilitation Act should be dismissed.

### POINT IV

### PLAINTIFFS' CLAIMS AND ISSUES ALLEGING THAT PEDESTRIAN RAMPS VIOLATE THE ADA AND THE REHABILITATION ACT ARE BARRED BY *RES JUDICATA* AND THE DOCTRINE OF COLLATERAL ESTOPPEL

Plaintiffs provide vague allegations concerning the conditions of pedestrian ramps that appear to be separate from their concerns about allegedly illegally parked vehicles in the Mt. Eden Mall area.  See Exhibit "A" (Compl.) at ¶¶ 55 ("curb cuts… damaged and in disrepair"); 56 ("inadequately sloped curb cuts"); & 186.  However any claims and issues alleging the that

pedestrian ramps violate the Title II of the ADA and § 504 of the Rehabilitation Act are barred by *res judicata* and the doctrine of collateral estoppel, and should be dismissed.

**A.      The <u>EPVA/CIDNY</u> Settlement Agreement is a Valid Final Judgment**

A settlement agreement or consent decree is entitled to preclusive effect as a valid final judgment.  <u>Waldman v. Village of Kyras Joel</u>, 39 F. Supp. 2d 370, 377 (2d Cir. 1999) (<u>citing</u> <u>Greenberg v. Bd. of Governors of Fed. Reserve Sys.</u>, 968 F.2d 164, 169 (2d Cir. 1992); <u>Cahill v. Arthur Anderson & Co.</u>, 659 F. Supp. 1115, 1120 (S.D.N.Y. 1986)).  This is so because the entry thereof requires the exercise of judicial power entitled to deference pursuant to the public policy favoring the finality of judgments.  <u>Amalgamated Sugar Co. v. NL Industrs., Inc.</u>, 825 F.2d 634, 639 (2d Cir. 1987) (<u>citing</u> <u>Pope v. United States</u>, 323 U.S. 1, 12 (1944), <u>Nestle Co. v. Chester's Mkt.</u>, 756 F.2d 280, 282 (2d Cir. 1985)).

Thus, the <u>EPVA</u> Stipulation & Order, <u>EPVA/CIDNY</u> Settlement Agreement and Release of Claims and <u>EPVA/CIDNY</u> Order and Judgment Granting Final Approval of Settlement of Class Action Lawsuits were valid final judgments that required the exercise of judicial power when they were respectively So-Ordered by Judge Thomas P. Griesa on September 9, 2002 and by George B. Daniels on July 23, 2019.  <u>See</u> Exhibits "H," "J" and "K"; <u>see also</u> <u>Waldman</u>, 39 F. Supp. 2d at 377 (finding that a settlement agreement constitutes a valid final judgment unless otherwise stipulated by the parties); <u>Amalgamated Sugar Co.</u>, 825 F.2d at 639 (noting that "absent evidence of collusion, judicial [consent] decrees disposing of issues in active litigation cannot be treated as idle ceremonies without denigrating the judicial process.").

**B.      Plaintiffs are Members of the Certified Class in the <u>EPVA/CIDNY</u> Class Actions and are Bound by the <u>EPVA/CIDNY</u> Settlement Agreement**

Second, although the same named parties and their privities are clearly bound by the terms of a settlement agreement, unnamed members of a certified class can also be bound,

even though not named parties in the original action.  <u>Smith v. Bayer</u>, 131 S. Ct. 2368, 2380 (2011); <u>Taylor</u>, 553 U.S. at 894.  Here, a judicially-approved class action will bind non-parties whose interests are adequately represented by the members of the class.  <u>Smith</u>, 131 S. Ct. at 2380; <u>Taylor</u>, 553 U.S. at 894; <u>Wolfert v. Transamerica Home First, Inc.</u>, 439 F.3d 165, 171 (2d Cir. 2005).

In the <u>EPVA</u> Stipulation & Order, Judge Griesa expressly granted certification pursuant to FRCP Rule 23(b)(2) to a class of "qualified individuals with a disability as defined in Section 201(2) of the ADA, 42 U.S.C. § 12131(2) who use or seek to use curb ramps in the City."  <u>See</u> Exhibit "H" at ¶ 34.  In the <u>EPVA/CIDNY</u> Settlement Agreement, which references <u>EPVA</u> Stipulation & Order (<u>see</u> <u>id</u>.), defined the "Plaintiff Class" as "'qualified individuals with a disability,' as defined in Section 201(2) of the ADA, 42 U.S.C. § 12131(2), who use or seek to use pedestrian ramps in the City."  <u>See</u> Exhibit "J" at ¶ I.U.

The definition of the certified class in the <u>EPVA/CIDNY</u> Settlement Agreement plainly falls within Plaintiffs' putative class herein, constituting "all people with mobility and vision disabilities who use or will use sidewalks and pedestrian street crossings in the East Mount Eden neighborhood."  Exhibit "A" (Compl.) at ¶¶ 28, 129 & 146. In the instant action, Plaintiffs allege, <u>inter</u> <u>alia</u>, that "[t]he sidewalks, crosswalks, and curb cuts in the East Mount Eden neighborhood are damaged and in disrepair" and that "Defendants have failed and continue to fail to maintain accessible pedestrian pathways in the East Mount Eden neighborhood…" in violation of the ADA, the Rehabilitation Act and the NYCHRL. <u>Id</u>. at ¶¶ 136, 151-52, 172 and 187.

The interests of the certified classes in the <u>EPVA/CIDNY</u> Settlement Agreement are compatible with the interests of the putative class in the instant action, and the interests of all

these groups to ensure the full integration of individuals with disabilities into the City by providing ADA compliant curb ramps are entirely aligned.  See Wolfert, 439 F.3d at 173; Amchen Prods., Inc., 521 U.S. at 625-26; In re Joint E. & S. Dist. Asbestos Litig., 78 F.3d 764, 778-79 (2d Cir. 1996).  Thus, Plaintiffs and the putative class members herein are unequivocally members of the prior certified class and are bound by the EPVA/CIDNY Settlement Agreement.

**C.    Plaintiffs' Claims Alleging Inaccessible Curb Ramps Were Already Litigated in the EPVA/CIDNY Class Actions and are Thus Precluded**

The doctrine of *res judicata* prevents parties from "relitigating any issue or defense that could have been raised in a previous suit, even if that issue or defense was not actually raised or decided."  Waldman, 39 F. Supp. 2d at 377 (quoting Woods v. Dunlop Tire Corp., 972 F.2d 36, 38 (2d Cir. 1992) (emphasis added)).  To determine the preclusive effect of a settlement agreement on the same or related claims, courts utilize a transactional analysis approach whereby the preclusive effect of a valid final judgment "depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first."  Woods, 973 F.2d at 38 (quoting NLRB v. United Techs., 706 F.2d 1254, 1260 (2d  Cir. 1988).  In addition, dispositive to a finding of preclusive effect is whether an independent judgment in a subsequent action would "impair or destroy rights or interests" established by the final judgment in the prior action.  Sure-Snap Corp. v. State St. Bank & Trust Co., 948 F.2d 869, 874 (2d Cir. 1991) (quoting Herendeen v. Champion Int'l Corp., 525 F.2d 130, 133 (2d Cir. 1975)).

It is also notable that the transactional analysis approach bars the same claim regardless of the legal theory advanced by a party.  See Norman v. Niagara Mohawk Power Corp., 873 F.2d 634, 638 (2d Cir. 1989) (citing In re Teltronics Servs., Inc., 762 F.2d at 193

("new legal theories do not amount to a new cause of action so as to defeat the principle of *res judicata*.")).  Here, courts use a flexible approach that recognizes the practical realities of the controversy at issue.  Waldman, 39 F. Supp. 2d at 377.  As long as two claims arise from the same core operative facts, the latter claim will be precluded.  Norman, 873 F.2d at 638 (internal quotations and citations omitted).  Moreover, and importantly, the simple pleading of additional incidents in a subsequent action underlying the same cause of action does not bar the application of *res judicata*.  Waldman, 39 F. Supp. 2d at 377.  Under these circumstances, claims "which did not even then exist which could not possibly been sued upon in the previous case" will not be extinguished.  St. Pierre v. Dyer, 208 F.3d 394, 400 (2d Cir. 2000) (quoting Lawlor v. Nat'l Screen Serv. Corp., 349 U.S. 322, 328 (1955)).

The certified classes in the EPVA/CIDNY Class Actions and Plaintiffs herein all allege that the City failed to provide accessible curb ramps in violation of the ADA and the Rehabilitation Act. Compare Exhibits "G" and "I" (EPVA Compl. at ¶¶ 33-42 and CIDNY Compl. at ¶¶ 73-76, 88) with Exhibit "A" (Compl. at ¶¶ 28, 129, 146).  The comprehensive 2019 EPVA/CIDNY Settlement Agreement governs all curb ramps in New York City, and provides relief to the class members through a specific remedial plan.  Moreover, compliance under the terms of the EPVA/CIDNY Settlement Agreement is on-going and provides adequate remedies to all class members, including a court appointed monitor who is tasked with overseeing compliance with the terms of the Settlement Agreement for at least 15 years.  See Exhibits "J" through "M."  Among other things, the EPVA/CIDNY Settlement Agreement sets forth a Pedestrian Ramp Complaint Program, a procedural remedy that allows "a member of the public to request installation or Upgrade of a pedestrian ramp."  Exhibit "J" at ¶ 14.  Specifically, "[r]equests for installation or Upgrades of pedestrian ramps may be made in-

person, via phone call to the City's 3-1-1 system, by submission of an online form, by email, or by letter." Id. at ¶ 14.2.  Thus, Plaintiffs claims regarding accessibility of curb ramps were fully litigated in the EPVA/CIDNY Class Actions and are precluded by the EPVA/CIDNY Settlement Agreement (see Exhibit "J") in the instant action.

Because the EPVA/CIDNY Settlement Agreement arose from essentially the same claims concerning pedestrian ramps, any independent judgment in the instant action could impair or destroy the rights or interests established by the parties therein.  See Sure-Snap Corp., 948 F.2d at 874.  Such an outcome would also needlessly expose the already certified class to the possibility of inconsistent determinations.  See Wyly, 697 F.3d at 140; Taylor, 553 U.S. at 892.

Conversely, in an alternate hypothetical example whereby this Court finds the City liable for violations of the ADA and Rehabilitation Act based on allegations of inaccessible pedestrian ramps or curb ramps, such a finding would destroy the rights of the City established in the EPVA/CIDNY Settlement Agreement, thereby potentially exposing the City to the expense and vexation attending multiple overlapping lawsuits.  See Sure-Snap Corp., 948 F.2d at 874. See also Wyly, 697 F.3d at 140; Taylor, 553 U.S. at 892.  Likewise, this finding might require setting different priorities and shifting resources from other locations to curb ramps in the Mt. Eden Mall area, which could be in conflict with the priorities set in the EPVA/CIDNY Settlement Agreement. See Exhibits "A" and "J."

Further, Plaintiffs' alternative legal theory against Defendants under NYCHRL is also precluded by the EPVA/CIDNY Settlement Agreement.  See Waldman, 39 F. Supp. 2d at 387 (noting that "res judicata attaches even if the claims are based on different legal theories." (citing Brooks v. Giuliani, 84 F.3d 1454, 1463 (2d Cir. 1996)).  Like the federal question claims alleged herein, all these causes of action are predicated on a single core of operative facts, in

-18-

particular the status of the City's sidewalk infrastructure.  <u>See</u> Exhibit "A" (Compl.) at ¶¶ 179-191; <u>see</u> <u>also</u> <u>Norman</u>, 873 F.2d at 638 (finding preclusive effect of prior judgment when cause of action "arose from a 'single core of operative facts,'" despite plaintiff's new legal theory) (quoting <u>Car Carriers, Inc. v. Ford Motor Co.</u>, 789 F.2d 589, 596 (7th Cir. 1986)).  Although this legal theory under NYCHRL was not raised in <u>EPVA</u>, it was raised in <u>CIDNY</u>.  <u>See</u> Exhibit "I" at ¶¶ 92-99.  Because the <u>EPVA/CIDNY</u> Settlement Agreement was a valid final judgment, this claim under NYCHRL, like the claims under the ADA and the Rehabilitation Act, is precluded by the operation of *res judicata* and should be dismissed.  <u>See</u> <u>EDP Med. Computer Sys.</u>, 480 F.3d at 624.

**D.     In the Alternative, Plaintiffs Are Also Barred by Collateral Estoppel from Relitigating the Issues Decided in the <u>EPVA/CIDNY</u> Class Actions**

          Plaintiffs are also barred by the doctrine of collateral estoppel from re-litigating the issues decided in the <u>EPVA/CIDNY</u> Settlement Agreement.  <u>See</u> Exhibits "J" through "M." Collateral estoppel is a "narrower species of *res judicata.*"  <u>Vargas v. City of New York</u>, 2007 U.S. Dist LEXIS 96308, *12 (S.D.N.Y. 2007)**.**  This doctrine prevents plaintiffs from relitigating an issue that was previously fully and fairly litigated in a prior proceeding.  <u>Bank of N.Y. v. First Millennium, Inc.</u>, 607 F.3d 905, 918 (2d Cir. 2010) (citing <u>Purdy v. Zeldes</u>, 337 F.3d 253, 258 (2d Cir. 2003)).  Collateral estoppel applies when "(1) the identical issue was raised in a prior proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment…." <u>Id.</u> (quoting <u>Ball v. A.O. Smith Corp.</u>, 451 F.3d 66, 69 (2d Cir. 2006)).

Delineation of the issues foreclosed by a prior proceeding requires an analysis of when each issue was raised and whether such issue is factual or legal in nature. Matusick v. Erie County Water Auth., 757 F.3d 31, 49 (2d Cir. 2014). As the Second Circuit held in Matusick:

> An issue is a single, certain and material point arising out of the allegations and contentions of the parties. It may concern only the existence or non-existence of certain facts, or it may concern the legal significance of those facts. If the issues are merely [factual], they need only deal with the same past events to be considered identical. However, if they concern the legal significance of those facts, the legal standards to be applied must also be identical; different legal standards as applied to the same set of facts create different issues.

Id. at 48-49 (quoting Overseas Motors, Inc. v. Import Motors Ltd., 375 F. Supp. 499, 518 n.66a (D. Mich. 1974), aff'd, 519 F.2d 119 (6th Cir. 1974), cert. denied, 423 U.S. 987).

In addition to being covered by *res judicata* as described above, the claims presented in the instant action concerning the City's curb ramps also present an identicality of factual and legal issues with those raised in the EPVA/CIDNY Class Actions (see Exhibits "G" and "I") and resolved by the EPVA/CIDNY Settlement Agreement (see Exhibits "J" through "M"). To wit, the issues Plaintiffs raise herein are whether the City's provision of curb ramps is compliant with the requirements of the ADA and the Rehabilitation Act (see Exhibit "A" (Compl.) at ¶¶ 28, 129 & 146. As explained in Point IV.A through IV.C above, each of these legal and factual issues were alleged in both EPVA and CIDNY. See Exhibits "G" and "I."

In general, a court-approved settlement agreement will suffice for the purposes of *res judicata*, but will not necessarily satisfy the requirement that an issue be actually litigated and decided for the purposes of collateral estoppel. Uzdavines v. Weeks Marine, Inc., 418 F.3d 138, 146-47 (2d Cir. 2005) (citations omitted). However, where the parties express an intent for the

stipulation to be binding in future litigation, the "issues to which the parties have stipulated will be considered 'actually litigated' for collateral estoppel purposes." Id. (citations omitted).

The EPVA/CIDNY Settlement Agreement explicitly manifests an intent for the parties to be bound in future litigation.   In the EPVA/CIDNY Settlement Agreement, the certified class agreed to "fully and finally release, acquit and discharge the City and its Related Entities from any and all claims, rights, demands, charges, complaints, actions, suits and causes of action… for injunctive or declaratory relief, or damages to members of the Plaintiff Class for denial of access to, exclusion from participation in, or denial of the benefits of pedestrian access where pedestrian walkways cross curbs."  Exhibit "J" at ¶ 8.1.  Further, it also sets forth a dispute resolution process to resolve disputes that might arise.  See id. at ¶ 23.  Therefore, the issues articulated above have been "'actually litigated'" for collateral estoppel purposes. See c.f. Uzdavines, 418 F.3d at 147 (finding no preclusive effect where parties expressed mutual understanding that the stipulation would not be binding on future claims by plaintiff).

Furthermore, even though they are not named plaintiffs in EPVA or CIDNY, Plaintiffs herein are nonetheless bound to the EPVA/CIDNY Settlement Agreement as parties, because they are members of the certified class.  See Muhammad v. Warithu-Deen Umar, 98 F. Supp. 2d 337, 343 (W.D.N.Y. 2000) (finding that unnamed members of certified class were precluded from relitigating issues determined as a result of class action settlement order); Wylw, 697 F.3d at 144.  As members of the certified class represented by competent class counsel, Plaintiffs had a full and fair opportunity to litigate – for years – the aforementioned issues regarding whether the pcurb ramps in the Mt. Eden Mall area are compliant with the ADA and Rehabilitation Act, as well as appropriate remediation measures.  Resolution of these litigated issues was necessary to support the EPVA/CIDNY Settlement Agreement, which constitutes a

valid final judgment.  See supra Point IV.A through IV.C.  Since the parties had a full and fair opportunity to litigate the issue articulated above, a resolution of which was necessary to support the EPVA/CIDNY Settlement Agreement, the issues regarding whether the City's provision of curb ramps are compliant with the requirements of the ADA, the Rehabilitation Act and NYCHRL are precluded and should be dismissed by this Court.

**POINT V**

> **PLAINTIFFS' VAGUE ALLEGATIONS CONCERNING CONDITIONS AND OBSTRUCTIONS ON THE SIDEWALKS FAIL TO STATE A CAUSE OF ACTION UNDER THE ADA OR THE REHABILITATION ACT**

Plaintiffs make bare-boned allegations concerning the conditions and obstructions on the sidewalks in the Mt. Eden Mall area that appear to be separate from their concerns about allegedly illegally parked vehicles and the pedestrian ramps.  See Exhibit "A" (Compl.) at ¶¶ 46-47 ("trash cans, debris, cracks in the pavement, level changes greater than a quarter of an inch, potholes, narrow pathways"), 55-56 ("[s]ignificant level changes, cracked and jagged sidewalks"), 62, 82, 157-58 ("deteriorating and broken sidewalks… potholes in sidewalks… protruding and/or moveable obstructions….") & 186.  Based upon these mere conclusory allegations, the Complaint fails to state a cause of action under Title II of the ADA or § 504 of the Rehabilitation Act, and should be dismissed.

In any event, pursuant to Section 19-152 of the Administrative Code, such alleged conditions of sidewalks are the adjacent property owners' responsibility to correct.

## POINT VI

## THIS COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S NYCHRL CLAIM

Finally, Plaintiffs invoke the supplemental jurisdiction of this Court with respect to their claim under NYCHRL[5] as related to Plaintiffs' federal ADA and Rehabilitation Act claims, over which this Court has original jurisdiction.  However, this Court should decline to exercise supplemental jurisdiction over Plaintiffs' local law claim.

Pursuant to 8 U.S.C. § 1367(c)(3), the District Court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction."  "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity,' in deciding whether to exercise jurisdiction."  Kolari v. Vail, 455 F.3d 117, 122 (2d Cir. 2006) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).  In weighing these factors, district courts consider "(1) the length of time the matter has been pending before the federal court; (2) the proximity of the trial date; and (3) the predominance of issues of federal, as oppose to local concern." Birch v. Pioneer Credit Recovery, Inc., 2007 U.S. Dist. LEXIS 41834 at *16 (W.D.N.Y. June 8, 2007).

Here, because Plaintiffs' federal claims should be dismissed, see supra Points I-V, the assertion of supplemental jurisdiction over the state law claims is not appropriate.  See Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("Federal courts normally decline to exercise jurisdiction over state law claims when all the federal claims have been dismissed before trial."); Castellano v. Bd. of Trs. of Police Officers' Variable Supplements Fund, 937 F.2d

---

[5] See Administrative Code at §§ 8-101 through 8-134.

752, 758 (2d Cir. 1991) (holding that "if [all] federal claims are dismissed before trial… [then] the state claims should be dismissed as well").  "Indeed, the Second Circuit has held that 'in the absence of any remaining federal claims, the appropriate analytic framework to be applied to discrimination claims based on a 'disability' as defined by the New York state and municipal law is a question best left to the court of the State of New York… [Thus,] the state-law claims should be dismissed so that the state courts can, if so called upon, decide for themselves whatever questions of state law this case may present." Sussle v. Sirina Prot. Sys. Corp., 269 F. Supp. 2d 285, 317 (S.D.N.Y. 2003) (quoting Giordano v. City of New York, 274 F.3d 740, 754 (2d Cir. 2001)).

Moreover, in cases dealing with Title II of the ADA and § 504 of the Rehabilitation Act – the same statutes at issue here – this Court has repeatedly declined to exercise supplemental jurisdiction over a NYCHRL claim after dismissing plaintiffs' ADA and Rehabilitation Act claims.  See e.g., Menes v. City University of New York Hunter College, 578 F. Supp. 2d 598, 620 (S.D.N.Y. 2008) (declining to exercise supplemental jurisdiction over remaining NYCHRL claim after granting summary judgment dismissing plaintiff's ADA and Section 504 of the Rehabilitation Act claims); Cain v. Rambert, 2014 U.S. Dist. LEXIS 74188, *35 (E.D.N.Y. May 30, 2014) (declining to exercise supplemental jurisdiction over NYCHRL claim and granting motion to dismiss plaintiff's ADA and Section 504 of the Rehabilitation Act claims); Sussle, 269 F. Supp. 2d at 317 (declining to exercise supplemental jurisdiction over NYCHRL claim after dismissing plaintiff's ADA claim); Sacay v. Research Found., 44 F. Supp. 2d 496, 502, n.2 (E.D.N.Y. 1999) (granting motion to dismiss plaintiff's ADA and Rehabilitation Act claims and holding that therefore "the exercise of supplemental jurisdiction over plaintiff's state and city law claims would not be proper." (citing 28 U.S.C. § 1367(c)(3)); Canales v. New

York City Health & Hosps. Corp., 2014 U.S. Dist. LEXIS 77037, *13 (S.D.N.Y. May 12, 2014) (declining to exercise supplemental jurisdiction over plaintiff's state law claims after granting motion to dismiss ADA and Rehabilitation Act claims).

The NYCHRL claim alleged by Plaintiffs herein implicates no federal question or any issues of federal policy or interest. See Exhibit "A" (Compl.) at ¶ 179-193. Further, this case remains in its initial stages and no trial date has been set. See Birch, 2007 U.S. Dist. LEXIS at *16; see also Valencia v. Lee, 316 F.3d 299, 305 (2d Cir. 2003).   Moreover, issues of local concern predominate Plaintiffs' NYCHRL cause of action because disability discrimination claims asserted under NYCHRL are analytically distinct – and much broader – than disability discrimination claims under the ADA. Sussle, 269 F. Supp. 2d at 316 (citing Epstein v. Kalvin-Miller Int'l Inc., 100 F. Supp. 200, 229 (S.D.N.Y. 2000); Giordano, 274 F.3d at 753)). Accordingly, this Court should refrain from exercising supplemental jurisdiction over Plaintiffs' remaining local law cause of action.

## CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings should be granted, and the Complaint dismissed in its entirety.

Dated:      New York, New York
            September 15, 2022

                              HON. SYLVIA HINDS-RADIX
                              Corporation Counsel of the
                                City of New York
                              Attorney for City Defendants
                              100 Church Street
                              New York, New York 10007
                              (212) 356-2209


                        By: _____
                              Jacqueline Hui (JH 6308)
                              Assistant Corporation Counsel