UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DISABILITY RIGHTS NEW YORK, CARLOS LEON, *and* STEPHANIE DIAZ, *on behalf of themselves and all others similarly situated*,

                      Plaintiffs,

– against –

THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, NEW YORK CITY DEPARTMENT OF TRANSPORTATION, ERIC ADAMS, *in his official capacity as Mayor of the City of New York*, KEECHANT L. SEWELL, *in her official capacity as Commissioner of the New York Police Department, and* YDANIS RODRIGUEZ, *in his official capacity as Commissioner of the New York City Department of Transportation*,

                      Defendants.

**OPINION & ORDER**

22-cv-04493 (ER)

RAMOS, D.J.:

      Disability Rights New York ("DRNY") and individual plaintiffs Carlos Leon and Stephanie Diaz ("Individual Plaintiffs") bring this class action on behalf of "all people with mobility and vision disabilities who use or will use sidewalks and pedestrian street crossings in the East Mount Eden neighborhood [of the Bronx]" ("the Putative Class").[1] Doc. 1, ¶ 28. Plaintiffs bring claims for violations of Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("Section 504"), and New York City Human Rights Law ("NYCHRL"). *Id.* ¶¶ 142–93. Defendants are the City of New York ("NYC"), the New York City Department of Transportation ("NYC DOT"), the New York City Police Department ("NYPD"), Mayor Eric Adams (in his official capacity as Mayor of the City of New York), Commissioner Keechant L. Sewell

---

[1] The Court refers to DRNY, Individual Plaintiffs, and the Putative Class collectively as "Plaintiffs."

(in her official capacity as the Commissioner of NYPD), and Commissioner Ydanis Rodriguez (in his official capacity as the Commissioner of NYC DOT) (collectively, "Defendants"). Doc. 1.

Before the Court is Defendants' motion for judgment on the pleadings. Doc. 49. For the reasons set forth below, Defendants' motion is GRANTED in part, and DENIED in part.

I. BACKGROUND

A. Parties

Both Leon and Diaz reside in the East Mount Eden neighborhood of the Bronx ("Mount Eden")[2] and have a disability. Doc. 1, ¶¶ 10–23. Leon has cerebral palsy and uses a wheelchair, while Diaz has keratoconus (a visual disability that causes her to have blurred vision and makes it difficult for her to perceive depth and motion). *Id*. DRNY serves as New York's Protection and Advocacy system, which means that it is specifically authorized to pursue legal remedies to ensure the protection of the rights of individuals with disabilities. *Id.* ¶¶ 24–26.

Defendants include three entities ("Entity Defendants") and three individuals in their official capacities ("Individual Defendants"). *Id.* ¶ 29–42. The Entity Defendants—NYC, NYC DOT, and NYPD—are "public entities" within the meaning of Title II of the ADA, and they receive federal funding and are thereby subject to the accessibility requirements of Section 504.[3] *Id.* ¶¶ 29–35. The Individual Defendants include Mayor Adams, as mayor of New York City, who is responsible for "the implementation of effective systems of internal control by each agency and unit under the jurisdiction of the mayor." *Id.* ¶ 38 (citing N.Y.C. Charter § 8(a)). Commissioner Rodriguez, as

---

[2] Mount Eden encompasses the area around Claremont Park and BronxCare Health Services Hospital. *Id*. ¶ 2. It is bordered by Jerome Avenue on the west, Clay Avenue on the east, 170th Street on the south, and 174th Street on the north. *Id.* ¶ 3.

[3] Section 504 prohibits an entity that receives federal financial assistance from discriminating on the basis of a disability. 29 U.S.C. § 794(a).

2

Commissioner of NYC DOT, is responsible for enforcing laws "concerning the parking of vehicles and the movement and conduct of vehicular and pedestrian traffic [including,] concurrently with the police department . . . restricting both the parking of vehicles and the movement and conduct of vehicular and pedestrian traffic in and on all streets. *Id.* ¶ 40 (citing N.Y.C. Charter § 2903(14)(a)-(b)). And Commissioner Sewell, as Commissioner of NYPD when the complaint was filed, was responsible "for the execution of all laws and the rules and regulations of the department," including the responsibility to "regulate, direct, control and restrict the movement of vehicular and pedestrian traffic for the facilitation of traffic . . . [and] the proper protection of human life and health" and the responsibility to "remove all nuisances in the public streets, parks and places." *Id.* ¶ 42 (citing N.Y.C. Charter § 434(b)).

### B. Factual Background

In the summer of 2020, in response to the COVID-19 pandemic, NYC DOT established "COVID-19 Medical Health On-Street Parking Permits" ("the Permits"). *Id.* ¶ 48. The Permits lifted some parking restrictions for healthcare workers; however, healthcare workers were still not allowed to park in crosswalks, sidewalks, bus stops, and bus and ambulance lanes. *Id.* ¶ 49. The Permits expired after two years, on June 30, 2022. Doc. 51 at 16.

Despite the expiration of the Permits, and notwithstanding that the Permits were only limited to healthcare workers, since July 2020, both Permit and non-Permit holders have been illegally parking in crosswalks and other pedestrian pathways in Mount Eden. Doc. 1, ¶¶ 50–51. Permit and non-Permit holders also park in ambulance lanes, in front of curb cuts, and on sidewalks around Mount Eden, which prevents Plaintiffs from accessing bus stops and makes the pedestrian pathways inaccessible. *Id.* ¶¶ 50–53. Diaz has notified the NYPD of these issues by making calls to 311, the non-emergency line for New York City services, but the NYPD has failed to address the parking violations and have neither cited nor removed the illegally parked vehicles. *Id.* ¶¶ 54, 95–97.

In addition, the sidewalks are "cracked and jagged" and "inadequately sloped," which presents obstacles and hazards to Plaintiffs. *Id.* ¶ 56.  For example, Leon is frequently unable to navigate his wheelchair outside of his home because "the pedestrian pathways are blocked by parked vehicles, and other movable objects such as garbage cans and debris." *Id.* ¶ 61.  Other barriers include vehicles parked in pedestrian crossings, blocking curb cuts and bust stops, and on sidewalks. *Id.* ¶ 62.  As a result of the architectural barriers and movable objects, Leon is forced to rely on family members to run errands for him; he must also find alternative travel routes, which can expose him to oncoming traffic because they force him to go on the street; and has even been trapped in his home when the sidewalks and curb cuts around his building are completely blocked by the parked vehicles. *Id.* ¶¶ 63–72.

Diaz likewise regularly relies on the pedestrian pathways around Mount Eden. *Id.* ¶¶ 78–80.  Due to her impaired vision and the unevenness of the sidewalks around Mount Eden, Diaz is prone to falling. *Id.* ¶ 82.  Moreover, when vehicles are parked in her pathway, Diaz is forced to step on to the street because she is unable to assess whether the parked vehicle in front of her is stationary or moving. *Id.* ¶¶ 84–86.  The fear of being struck by a moving vehicle causes Diaz emotional distress. *Id.* ¶ 90.  Diaz also wears "glass scleral lenses" that help manage her condition. *Id.* ¶ 87.  However, because she helps Leon navigate the neighborhood, she often wears the lenses for up to sixteen hours a day, instead of only the recommended eight hours. *Id.* ¶ 88.  Overusing the lenses has caused scarring and further damage to her vision. *Id.* ¶ 89.

Since July 2020, Diaz has made dozens of calls to 311. *Id.* ¶ 96.  Despite the 311 reports, however, Defendants have not removed the barriers. *Id.* ¶ 97.  In addition, Plaintiffs have contacted multiple parties in order to resolve the dispute, including several leaders of the neighboring hospital, NYPD's 44th Precinct, Mayor Adams, Commissioner Sewell, and Commissioner Rodriguez. *Id.* ¶¶ 98–107, 113–116.

Defendants have afforded some remedies to Plaintiffs, including NYC DOT working with the neighboring hospital to remove tents placed on the sidewalk around the hospital's entrance.  *Id.* ¶ 125.  Additionally, the sergeant of NYPD's 44th Precinct gave Plaintiffs the "phone numbers and emails of the [n]eighborhood [c]ommunity [o]fficers of the precinct and encouraged Plaintiffs to call whenever they could not navigate around a parked vehicle in the pedestrian pathway."  *Id.* ¶ 126.  Despite these efforts, Plaintiffs continue to be obstructed by the conditions and parked cars on the pedestrian pathways in Mount Eden.  *Id.* ¶ 127.

### C. Procedural History

Plaintiffs filed the instant action on June 1, 2022.  Doc. 1.  Under their ADA claim, Plaintiffs seek injunctive and declaratory relief, in addition to attorney costs, compensatory, and punitive damages.  *Id.* ¶¶ 162–63.  Similarly, under their Section 504 and NYCHRL claims, Plaintiffs seek injunctive and declaratory relief, in addition to attorney costs.  *Id.* ¶¶ 177, 193.

The next day, Plaintiffs filed an emergency motion for a temporary restraining order and a preliminary injunction to require "Defendants [to] take immediate action to remove all parked vehicles from the pedestrian pathways."  Doc. 16-1 (Suppl. TRO/Prelim. Injunction Mem. of Law) at 5.  Following a hearing on June 9, 2022, the Court denied the motion because it found that the parking dispute had existed since the Permits were first issued in July 2020, and Plaintiffs' two-year delay in bringing the action demonstrated there was no imminent danger, a requirement for granting a temporary restraining order.  Doc. 39 (June 9, 2022 Hr'g Tr.) at 25:15–26:1.  The Court also noted that "it is patently not the province of courts to get involved with directing other governmental agencies on matters affecting their discretion to carry out their activities."  *Id.* at 26:2–18.

Defendants filed their answer on July 8, 2022.  Doc. 41.  However, before discovery commenced, Defendants notified the Court of their intention to file the instant

motion and, following a pre-motion conference on August 25, 2022, the Court stayed discovery pending the resolution of the motion. Aug. 25, 2022 Minute Entry. Defendants filed the instant motion on September 16, 2022. Doc. 49.

On October 5, 2022, the United States filed a Statement of Interest in support Plaintiffs "to address the statutory and regulatory requirements of the [ADA]." Doc. 53 at 6.

## II.   LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that [for granting] a Rule 12(b)(6) motion for failure to state a claim." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (alteration in original) (citation omitted). Accordingly, a motion for judgment on the pleadings should be granted "if, from the pleadings, the moving party is entitled to judgment as a matter of law." *Burns Int'l Sec. Servs., Inc. v. Int'l Union*, 47 F.3d 14, 16 (2d Cir. 1995) (per curiam). The Court accepts as true the pleadings' factual allegations and draws all reasonable inferences in the non-movant's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *see also Lombardo v. Dr. Seuss Enter., L.P.*, 279 F. Supp. 3d 497, 505 (S.D.N.Y. 2017) (noting that, in considering a motion for judgement on the pleadings, "all pleadings . . . are taken to be true, subject to the same plausibility standard that applies on a Rule 12(b)(6) motion").

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at

6

556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). However, this "flexible plausibility standard" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (internal quotation marks and citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). Indeed, "the purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citation omitted).

"For purposes of this rule, the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

## III. DISCUSSION

Defendants move to dismiss on six bases. First, Defendants argue the Individual Defendants, NYPD, and NYC DOT are "not suable entities." Doc. 51 at 11. Second, they argue that Plaintiffs' allegation regarding the pattern of illegal parking created by the Permits is moot, as the Permits expired on June 30, 2022. *Id.* Third, Plaintiffs are demanding the enforcement of "unspecified" laws or rules in the nature of mandamus, but federal courts are prohibited from compelling city officials to act or to dictate how a city will allocate its resources. *Id.* at 20. Fourth, Plaintiffs' claims regarding pedestrian ramps

in New York are barred by *res judicata* or collateral estoppel based upon a 2019 class action settlement that addressed inaccessible ramps in New York City ("the Previous Settlement").[4]  *Id.*  Fifth, as to the sidewalk conditions, Plaintiffs fail to state a cause of action under the ADA or Section 504.  *Id.*  Lastly, once Plaintiffs' federal claims are dismissed, Defendants ask the Court to decline to exercise supplemental jurisdiction over the remaining NYCHRL state law claim.  *Id.*

In opposition, Plaintiffs argue they have properly stated claim, as their complaint "is well-pled, with clear and sufficient allegations of Defendants' persistent failure to provide accessible pedestrian pathways to people with disabilities within" Mount Eden. Doc. 54 at 8.  Further, they can properly seek injunctive—as opposed to monetary—relief against the Individual Defendants.  *Id*.  They further argue that their claims are not mooted by the expiration of the Permits, as their claims are not dependent on the existence of the Permits; rather they allude to the Permits "to explain a point in time when the problems worsened for Plaintiffs." *Id.* at 23.  In fact, Plaintiffs argue that there is "no reasonable expectation that the alleged violations will not occur in the future," especially since the parking violations in Mount Eden continue despite the expiration of the Permits.  *Id.* at 8.  Plaintiffs also argue that they are not seeking a writ of mandamus. *Id.*  Moreover, their claims are not precluded because their "claims are fundamentally different than those in the" EVPA/CIDNY Class Actions.  *Id.* at 26.  Lastly, Plaintiffs ask the Court to retain supplemental jurisdiction over the state claim.  *Id.* at 8.

The Court addresses each argument in turn.

---

[4] The Previous Settlement resulted from two separate suits: *Eastern Paralyzed Veterans Association v. City of New York*, No. 94-cv-435, and *Center for Independence of the Disabled, New York v. City of New York*, No. 14-cv-5884, both of which were filed in the Southern District of New York (together, "the EVPA/CIDNY Class Actions").  Though the cases were filed separately, they were resolved jointly in a single settlement.

### A. The Claims Against NYC DOT and NYPD are Dismissed

Plaintiffs concede that NYC DOT and NYPD are not subject to suit. Doc. 54 at 30. Plaintiffs' claims against NYC DOT and NYPD are therefore dismissed.

### B. Plaintiffs May Sue the Individual Defendants in Their Official Capacities for Injunctive Relief Pursuant to the ADA and Section 504

Defendants argue Plaintiffs cannot sue the Individual Defendants in their official capacities because "[a] claim against a municipal officer in [their] official capacity is considered no different than a claim against the municipality itself," and, since Plaintiffs cannot sue an agency, they also cannot sue the Individual Defendants. Doc. 51 at 15–16. Plaintiffs respond that they are not seeking money damages from the Individual Defendants, which would not be permissible, but instead only seek injunctive relief, which is permissible. *See* Doc. 54 at 29–30.

The Eleventh Amendment precludes suits for monetary damages from proceeding against states or state officials acting in their official capacity, unless the state has waived its sovereign immunity. *Fla. Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 684 (1982); *see McMillian v. Monroe Cty.*, 520 U.S. 781, 785 n. 2 (1997) ("[A] suit against a governmental officer in his official capacity is the same as a suit against [the] entity of which [the] officer is an agent." (citations and internal quotation marks omitted)). But "[t]he Eleventh Amendment . . . does not preclude suits against state officers in their official capacity for prospective injunctive relief to prevent a continuing violation of federal law." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 287 (2d Cir. 2003) (citing *Ex parte Young*, 209 U.S. 123 (1908)).

Here, Plaintiffs seek both money damages and injunctive relief but did not clearly state in the complaint which relief was sought from whom. *See generally* Doc. 1. Plaintiffs now assert that they seek only injunctive relief, not money damages, from the Individual Defendants. *See* Doc. 54 at 29–30. Accordingly, Plaintiffs may sue the Individual Defendants in their official capacity for injunctive relief, but their claims are dismissed insofar as they seek monetary damages against the Individual Defendants.

9

### C. The Expiration of the Permits Did Not Moot Plaintiffs' Claims

Defendants argue that Plaintiffs' claims, which they characterize as being dependent on the existence of the Permits, are now moot because the Permits expired on June 30, 2022. Doc. 51 at 16–19. In opposition, Plaintiffs argue that their claims are not dependent on the existence of the Permits, which were cited "to explain a point in time when the problems worsened for Plaintiffs." Doc. 54 at 23. Indeed, Plaintiffs allege "[v]ehicles continue to park in the pedestrian pathways and on the sidewalks, blocking Plaintiffs' access to the pathways, and Plaintiffs observe no meaningful increase in . . . enforcement activity by Defendants since the expiration of the Permits." *Id.* at 24.

If a claim has become moot prior to the entry of final judgment, the district court generally must dismiss the claim for lack of subject matter jurisdiction.[5] *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Id.* (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)). However, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). Instead, voluntary cessation of allegedly illegal activities renders a case moot only "if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016) (citation omitted). The

---

[5] Because mootness operates to deprive the Court of subject matter jurisdiction, Defendants' argument is properly analyzed pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Bais Yaakov of Spring Valley v. Educ. Testing Serv.*, No. 13-cv-4577 (KMK), 2021 U.S. Dist. LEXIS 18699, at *11 (S.D.N.Y. Jan. 31, 2021). In resolving a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), a district court may consider evidence outside the pleadings. *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *see also Shabtai v. Shabtai*, No. 20-cv-10868 (JGK), 2022 U.S. Dist. LEXIS 104278, at *1-2 (S.D.N.Y. June 10, 2022) (considering evidence outside the pleadings in resolving a jurisdictional argument raised in a motion pursuant to Rule 12(c)).

party who seeks to have the case dismissed as moot "bears the burden of demonstrating mootness[,] and that burden is a heavy one." *Chen-Oster v. Goldman, Sachs & Co.*, 251 F. Supp. 3d 579, 590 (S.D.N.Y. 2017) (citation omitted).

Here, the Court finds that Defendants have not met their burden to show that the violations will not recur. Although the Permits expired on June 30, 2022, approximately 29 days after the instant suit was filed, the Court finds that the Plaintiffs have sufficiently alleged that the barriers remain in Mount Eden, even after the expiration of the Permits. *See* Doc. 54 at 23–24 (explaining that "[v]ehicles continue to park in the pedestrian pathways and on the sidewalks, blocking Plaintiffs' access to the pathways," even as of October 6, 2022, over three months after the expiration of the Permits). Moreover, Defendants can point to no policy or enforcement changes that would result in the alleged removal of the barriers in Mount Eden. *See Am. Council of the Blind of N.Y., Inc. v. City of New York,* 495 F. Supp. 3d 211, 248–49 (S.D.N.Y. 2020) (holding a claim for injunctive relief was not moot where defendants did not "point[] to any safeguards that would prevent the new policy from being changed, rescinded, or honored in the breach," and defendants were "at liberty to reverse or revise this policy"); *see also R.O. v. Ithaca City Sch. Dist.*, No. 05-cv-695 (NAM), 2010 U.S. Dist. LEXIS 164873, at *12–16 (N.D.N.Y. Jan. 26, 2010) (collecting cases). Thus, there is a reasonable expectation the alleged violations will recur, and the expiration of the Permits does not render Plaintiffs' claims moot. *See United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968) ("A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.").

### D.  Plaintiffs are not Seeking a Writ of Mandamus

Defendants ask the Court to dismiss the instant case because they argue that the relief Plaintiffs seek under the ADA and Section 504 is in the nature of mandamus, and federal courts do not have jurisdiction to issue such relief over municipal (as opposed to federal) officers and employees. *See* Doc. 51 at 19–22. Specifically, Defendants argue

11

that Plaintiffs seek a "particular outcome"—for "Defendants to immediately and routinely issue summonses and tow vehicles illegally parked" in Mount Eden—and that constitutes a writ of mandamus. *Id.* at 21–22. Plaintiffs deny that they seek a writ of mandamus and assert that they seek injunctive relief. Doc. 54 at 24–26.

Defendants are correct that federal courts may not issue writs of mandamus against state officials. *Spain v. Agostino*, No. 19-cv-4306 (LLS), 2019 U.S. Dist. LEXIS 86111, at *3 (S.D.N.Y. May 21, 2019) (holding that federal courts "have no general power to compel action by state officials" (quoting *Davis v. Lansing*, 851 F.2d 72, 74 (2d Cir. 1988))). Moreover, "mandamus is an extraordinary remedy, intended to aid only those parties to whom an official or agency owes 'a clear nondiscretionary duty.'" *Escaler v. U.S. Citizenship & Immigration Servs.*, 582 F.3d 288, 292 (2d Cir. 2009) (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)); *see also Miller v. French*, 530 U.S. 327, 339 (2000) (holding that a party who seeks a writ of mandamus must show a "clear and indisputable right" to its issuance (citation omitted)). And the Second Circuit has recognized "that there are many ways [a public entity] may meet its statutory obligations" under the ADA. *Disabled in Action v. Bd. of Elections in New York City*, 752 F.3d 189, 206 (2d. Cir. 2014). Accordingly, Defendants are correct that it would be inappropriate for the Court to issue a writ of mandamus here, both for the reason that federal courts may not issue such writs against state officials and because ADA compliance entails some the exercise of some discretion. *See Disabled in Action*, 752 F.3d at 206; *Escaler*, 582 F.3d at 292; *Spain*, 2019 WL 2209162, at *2.

But Plaintiffs do not seek a writ of mandamus; they seek injunctive relief.[6] Doc. 54 at 24–26. Indeed, courts regularly issue injunctive relief in similar ADA cases

---

[6] Specifically, in their complaint, Plaintiffs state that they seek injunctive relief requiring Defendants to:

    a. Promptly remove vehicles parked in the pedestrian pathways along Mount Eden Mall, including within all intersections between Grand Concourse and Weeks Avenue;

(generally once all findings of fact and resulting conclusions of law are made, such that the injunction may be precisely tailored to the violations to be remedied). *See, e.g., Garcia v. S.U.N.Y. Health Scis. Ctr.*, 280 F.3d 98, 115 (2d Cir. 2001) (holding that private individuals may obtain injunctive relief for state violations of Title II of the ADA); *Am. Council of the Blind v. City of New York*, 579 F. Supp. 3d 539, 569 (S.D.N.Y. 2021) ("[C]ourts that have found systemic violations by local governments and public entities of the ADA and/or the Rehabilitation Act have imposed injunctive remedies—and, where necessary, broad-ranging ones—to cure those violations.").[7] This is because federal civil rights statutes generally provide for injunctive relief without relying on mandamus. *See, e.g., English v. Laidler*, No. 09-cv-245 (CAR), 2009 U.S. Dist. LEXIS 88063, at *2 (M.D. Ga. Sept. 24, 2009) ("[A] petition for injunctive relief is properly brought as a request for a mandatory injunction under Section 1983, as distinguished from a petition for mandamus under 28 U.S.C. § 1361."). Accordingly, Defendants err in characterizing the relief Plaintiffs seek as available only by writ of mandamus; it is appropriately before

---

b. Immediately and meaningfully respond to reports of vehicles blocking the pedestrian pathways along Mount Eden Mall when made through 311 or directly to the NYC DOT or NYPD;
c. Take necessary steps to ensure the pedestrian pathways along Mount Eden Mall become and remain accessible for people with mobility and vision disabilities; and
d. Take necessary steps to ensure the pedestrian pathways in the East Mount Eden neighborhood comply with the minimum requirements set forth in the Americans with Disabilities Architectural Guidelines, as established by the United States Department of Justice.

Doc. 1 at 29. Plaintiffs also seek a permanent injunction requiring Defendants to:

a. Establish and implement policies and practices to ensure that barriers to the pedestrian pathways are addressed timely;
b. Establish and implement policies and practices to ensure that Defendants do not discrimination against the Named Plaintiffs and the [Putative] Class members, by denying them access to the pedestrian pathway program.

*Id.*

[7] *See also Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 337 F.3d 201, 205–06 (2d Cir. 2003); *Johnson v. Callanen*, 22-cv-409 (W.D. Tex., July 27, 2023), Doc. 62 (Permanent Injunctive Order); *Rodde v. Bonta*, No. 03-cv-1580 (FMC), 2003 U.S. Dist. LEXIS 28808, at *25–26 (C.D. Cal. May 6, 2003), *aff'd*, 357 F.3d 988 (9th Cir. 2004); *Henrietta D. v. Giuliani*, 95-cv- 641 (SJ), 2001 U.S. Dist. LEXIS 21834 (E.D.N.Y. Dec. 11, 2001), *aff'd sub nom. Henrieta D. v. Bloomberg*, 2003 U.S. App. LEXIS 11440 (2d Cir., June 9, 2003); *Liberty Res., Inc. v. SEPTA*, No. 99-cv-4837 (LAR), 2001 U.S. Dist. LEXIS 13975, at *31–39 (E.D. Pa. Aug. 30, 2001).

the Court as a request for injunctive relief.[8]  It is premature, however, for the Court to parse the precise terms of the injunctive relief Plaintiffs seek in their complaint at this time, before discovery has begun.  No injunctive relief will issue absent findings of fact and conclusions of law, made upon further submissions of the parties, at which time Defendants may renew any objections that the specific conduct Plaintiffs seek to enjoin crosses the line into impermissible mandamus.

Finally, Defendants make no arguments that Plaintiffs are not entitled to injunctive relief, instead resting their sole argument on the fact that Plaintiffs seek mandamus.  *See* Doc. 51.  Accordingly, Defendants' arguments are unavailing.

### E.  Plaintiffs are Precluded from Challenging Inaccessible Curb Cuts

Defendants seek to dismiss Plaintiffs' claims, insofar as they concern the inaccessibility of curb cuts, on the basis of *res judicata* (claim preclusion) and collateral estoppel (issue preclusion).  Doc. 51 at 22–31.  Plaintiffs respond that their claims are not precluded on either basis, notwithstanding "Plaintiffs' presumptive membership in" the EPVA and CIDNY Class Actions.  Doc. 54 at 26.

#### 1.  *Claim Preclusion Bars Plaintiffs' Claims as to Inaccessible Curb Cuts in Mount Eden*

Defendants argue Plaintiffs are barred by claim preclusion based on the Previous Settlement because both the instant claims and those in the EVPA/CIDNY Class Actions allege that the City violated the ADA and Section 504 by failing to provide accessible curb cuts.  Doc. 51 at 25–28.  To assert an affirmative defense of claim preclusion, a party must show that an earlier decision was (1) a final judgment on the merits (2) made by a court of competent jurisdiction (3) in a case involving the same parties or their privies and (4) the same cause of action.  *MacKinnon v. City of New York/Human Res. Admin.*, 580 F. App'x 44, 45 (2d Cir. 2014) (summary order).  Pursuant to the fourth requirement,

---

[8] Additionally, unlike writs of mandamus, courts *can* issue injunctions against state public officials in their official capacity.  *See, e.g., Ex parte Young*, 209 U.S. 123 (1908)

14

claim preclusion will apply when a claim "not raised in the previous action could have been raised therein," which "depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014) (quoting *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir.1992)).  To ascertain whether two actions arise from the "same transaction" or "same claim," a court looks to "whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001).

Here, Plaintiffs argue the EVPA/CIDNY Class Actions did not involve the same cause of action—and claim preclusion therefore does not bar their claims—because the Previous Settlement (1) is "geographically distinguishable"; (2) is focused exclusively on curb ramps, whereas the instant case alleges "diverse ADA violations . . . ranging from the City's failure to remove parked vehicles . . . to its failure to remedy architectural barriers"; and (3) only covers claims from 1994 to 2014.  Doc. 54 at 26–27.

The EPVA/CIDNY Class Actions involved claims brought by "qualified individuals with a disability" who use or seek to use curb ramps in New York City.  Doc. 51 at 24; *see also* Doc. 50-8 (EPVA Settlement) ¶ 34; Doc. 50-10 (EPVA/CIDNY Settlement) at 6.  The Previous Settlement thus addressed relief for qualified individuals who use "pedestrian ramps at all locations in the City where pedestrian walkways cross curbs."  Doc. 50-10 at 10–11.

The Putative Class here includes "all people with mobility and vision disabilities who use or will use sidewalks and pedestrian street crossings in" Mount Eden.  Doc. 1, ¶ 28.  Plaintiffs seek relief in Mount Eden for inaccessible pedestrian pathways, based on obstructions such as "parked vehicles that block curb cuts and intersections, and barriers

15

along the sidewalks such as trash cans, debris, cracks in the pavement, level changes greater than a quarter of an inch, potholes, narrow pathways, and other issues." *Id.* ¶ 46.

Unquestionably, the Previous Settlement, which applies to all of New York City, includes Mount Eden. *See* Doc. 50-10 at 6 (defining a pedestrian ramp subject to the settlement as "any ramp, cut, or slope where a pedestrian walkway crosses a curb that is . . . maintained by or otherwise within the responsibility of the City"). In fact, Plaintiffs appear to concede this point, while seemingly arguing the opposite conclusion. *See* Doc. 54 at 27 (arguing that "EPVA encompassed all of New York City . . . while CIDNY was limited to Lower Manhattan" but, "Plaintiffs' claims are geographically distinguishable. . . because the underlying case exclusively concerns a 0.25 square mile area in [Mount Eden]").

Furthermore, the Previous Settlement operated as a release of declaratory and injunctive claims "for denial of the benefits of pedestrian access where pedestrian walkways cross curbs" throughout the term of the Previous Settlement. Doc. 50-10 at 12–13. Thus, the Previous Settlement encompasses Plaintiffs' claims regarding the inaccessibility of the curb cuts, and the appropriate avenue for relief as to such claims is through the Previous Settlement, not the instant litigation. Because the class in the EPVA/CIDNY Class Actions includes the Putative Class, and the Previous Settlement is dispositive of Plaintiffs' claims concerning inaccessible curb cuts in Mount Eden, the claims are precluded by *res judicata*. *See Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 290 (2d Cir. 2000) (finding that plaintiffs claims were barred by *res judicata* where the "new incidents about which plaintiffs now complain fall within the same queue as those [alleged] under the earlier version," even though the new violations post-date the prior action).

2. *Issue Preclusion Also Prevents Plaintiffs from Relitigating the Issues Concerning Inaccessible Curb Cuts in Mount Eden*

Defendants additionally argue the Previous Settlement collaterally estops Plaintiff because the claims presented in the instant action concerning the City's curb ramps are identical to the factual and legal issues raised in the Previous Settlement. Doc. 51 at 28–31. In opposition, Plaintiffs argue the instant case differs from the EVPA/CIDNY Class Actions in that instant case deals with (1) "the issue of movable barriers[,] . . . many of which are controlled by third parties," which was not litigated at all in the prior actions, and (2) "the issue of architectural barriers," which was not litigated "specifically in the East Mount Eden neighborhood of the Bronx." Doc. 54 at 27–28.

Issue preclusion applies when the (1) the issues in both proceedings are identical; (2) the issue was actually litigated and decided; (3) there was full and fair opportunity to litigate in the prior proceeding; and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits. *United States v. Hussein*, 178 F.3d 125, 129 (2d Cir. 1999). Class settlements of injunctive claims can preclude subsequent suits for injunctive claims concerning similar factual subject matter. *See Morabito v. New York*, 803 F. App'x 463, 466–67 (2d Cir. 2020) (affirming district court's holding that a claim for injunctive relief was precluded based on collateral estoppel); *Wal-Mart Stores, Inc., v. Visa U.S.A. Inc.*, 396 F.3d 96, 107 (2d Cir. 2005) ("The law is well established in this Circuit and others that class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct." (quoting *TBK Partners*, Ltd. v. W. Union Corp., 675 F.2d 456, 460 (2d Cir. 1982))).

Here, the Previous Settlement addressed "denial of the benefits of pedestrian access where pedestrian walkways cross curbs" and mandated that New York City "maintain its pedestrian ramps as required by the [ADA and Rehabilitation Act]." Doc. 50-10 at 13, 22. Thus, the Previous Settlement does not distinguish amongst causes of

17

inaccessibility of curb cuts and in fact encompasses Plaintiffs' claims here. Therefore, Plaintiffs are collaterally estopped from litigating any claims regarding the inaccessibility of curb cuts in Mount Eden. *See Morabito*, 803 F. App'x 463 at 466–67; *Wal-Mart Stores*, 396 F.3d 96 at 107.

### F. Plaintiffs Sufficiently Stated a Claim Under the ADA and Section 504

Finally, Defendants argue that Plaintiffs failed to state a claim under the ADA or Section 504 with respect to the sidewalk conditions and obstructions. Excluding citations to paragraphs of the complaint, the entirety of Defendants' argument reads:

> Plaintiffs make bare-boned allegations concerning the conditions and obstructions on the sidewalks in the Mt. Eden Mall area that appear to be separate from their concerns about allegedly illegally parked vehicles and the pedestrian ramps. Based upon these mere conclusory allegations, the Complaint fails to state a cause of action under Title II of the ADA or § 504 of the Rehabilitation Act, and should be dismissed.
>
> In any event, pursuant to Section 19-152 of the Administrative Code, such alleged conditions of sidewalks are the adjacent property owners' responsibility to correct.

Doc. 51 at 31.[9] In opposition, Plaintiffs identify the specific architectural obstructions (including cracks in the pavement, level changes, potholes, and narrow pathways) and movable obstructions (including parked vehicles, trash cans, and debris) that they allege render the pedestrian pathways inaccessible in violation of the ADA, Section 504, and the NYCHRL. Doc. 54 at 16–20. And § 19-152 does not impact Defendants' ADA liability. *Id.* at 20–21.

First, where defendants make only a "conclusory" argument that a claim is insufficiently pled, but "do not explain the deficiencies with [a] plaintiff's pleadings, the Court will not dismiss the claim." *See F.C. v. N.Y.C. Dep't of Educ.*, No. 15-cv-6045

---

[9] To the extent that Defendants raise additional and more fulsome arguments in Reply as to why Plaintiffs fail to state a claim (Doc. 55 at 7–12), those arguments were not properly raised and are not appropriately before this Court. *See MFW Assocs., LLC v. Plausteiner*, No. 15-cv-2513 (PAE), 2016 U.S. Dist. LEXIS 56151, at *2 n.2 (S.D.N.Y. Apr. 27, 2016) ("[N]ew arguments may not be made in a reply brief." (quoting *DSND Subsea AS v. Oceanografia, S.A. de CV*, 569 F. Supp. 2d 339, 347 (S.D.N.Y. 2008))).

(PAE), 2016 2016 U.S. Dist. LEXIS 103476, at *56 n.16 (S.D.N.Y. Aug. 5, 2016). Thus, Defendants' conclusory arguments that Plaintiffs' claims are "bare-boned" are insufficient to justify dismissal. *See id.*

Rather, Defendants' sole alleged deficiency is that sidewalk conditions are the adjacent property owners' responsibility. *See* Doc. 51 at 31. But Defendants submit no authority from which the Court can conclude that § 19-152 operates to entirely eliminate[10] Defendants' liability under the ADA for Plaintiffs' claimed injuries. *See id*; Doc. 55 at 12. Accordingly, Defendants' citation to NYC Administrative Code § 19-152 is unavailing, and the Court declines to dismiss Plaintiffs' ADA and Section 504 claims on that basis.

### G. The Court Will Retain Jurisdiction of the Case

Finally, Defendants argue that the Court should decline to exercise supplemental jurisdiction over the sole remaining state law claim if it dismisses the federal claims. Doc. 51 at 32–34. Because the Court has not dismissed the federal claims, it retains supplemental jurisdiction over the state claim. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009).

---

[10] Even if the Court were to accept that § 19-152 operates to shift ADA liability for architectural sidewalk defects from Defendants to adjacent property owners, insofar as the sidewalks are private property, that would not dispose of the entirety of Plaintiffs' claimed injuries, some of which arise from mobile barriers and some of which are on public streets that are Defendants' responsibility to maintain. *See* Doc. 54 at 20–21. To the extent Defendants continue to maintain that § 19-152 limits their liability with respect to architectural defects in private sidewalks, Defendants may renew such argument at the appropriate time with citations to supporting authority.

19

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion is DENIED. Additionally, the Court lifts the prior stay on discovery.

The parties are directed to appear for a telephonic conference on November 1, 2023 at 11:30 AM. They are directed to call (877) 411-9748 at that time and enter access code 3029857#.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 49.

It is SO ORDERED.

Dated:  September 28, 2023
        New York, New York

                                        _____
                                        EDGARDO RAMOS, U.S.D.J.